[No. S042737. Aug. 3, 1998.]

In re GERALD A. GALLEGO on Habeas Corpus.

**COUNSEL**

Linda E. Shostak and Rachel Krevans, under appointments by the Supreme Court, Carolyn A. Johnston, Michael R. Goldstein and Morrison & Foerster for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass and Dane R. Gillette, Assistant Attorneys General, Stan M. Helfman and Christopher J. Wei, Deputy Attorneys General, for Respondent.

## OPINION

**GEORGE, C. J.**—Petitioner's judgment of conviction and sentence of death was affirmed on appeal in 1990 (*People* v. *Gallego* (1990) 52 Cal.3d 115 [276 Cal.Rptr. 679, 802 P.2d 169], cert. den. (1991) 502 U.S. 924 [112 S.Ct. 337, 116 L.Ed.2d 277] (*Gallego I*)). In October 1994, shortly after we granted the motion of present counsel to replace petitioner's appellate counsel, petitioner filed this petition for a writ of habeas corpus, his first state habeas corpus petition, raising 35 claims.

We issued an order to show cause in this matter and in the companion case of *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311] (*Robbins*), to address issues relating to application of the procedural bar of untimeliness. Our order to show cause herein directed the parties to address a narrow issue: whether, and under what circumstances, this court's denial of a confidential request for habeas corpus investigation funds may be relevant to establishing the absence of substantial delay or good cause for such delay with regard to related, later-filed habeas corpus claims.

We conclude that a petitioner's timely request for investigation funds, and our denial of that request, are, under circumstances described herein, relevant to our inquiry into "substantial delay" in two respects: First, a request for funds is relevant to a petitioner's allegation that information offered in support of certain of his or her claims was obtained recently and was not known earlier. Second, our denial of a petitioner's timely request for investigation funds will support a determination that the petitioner not only did not *actually know* of the information earlier but also *should not reasonably have known* of the information earlier. If (i) discovery of the information offered in support of a claim requires the expenditure of funds, (ii) the petitioner is indigent and cannot fund the investigation personally, and (iii) the petitioner timely files a request for funding of a specific proposed investigation, fully disclosing all asserted triggering information in support of the proposed investigation, then the petitioner's appointed counsel has exercised reasonable diligence with respect to the proposed claim. When our court denies such a request for investigation funds—having determined that the petitioner has failed to present sufficient "triggering facts" to support the proposed investigation—we cannot properly find that the petitioner *should*

*have discovered* such information without first obtaining funding from some other source or learning of the information in some other manner. Appointed counsel for the petitioner has no obligation personally to fund a habeas corpus investigation (whether or not the investigation is supported by "triggering facts"). Thus, a denial of a request for investigation funds is, under the described circumstances, relevant to whether a petitioner "should have known" of the information earlier.

Nevertheless, although we conclude that such a request for investigation funds is relevant to the determination of the timeliness of a subsequently filed habeas corpus petition, petitioner in this case, as we shall explain, has failed to meet his burden of establishing that the claims presented in his petition were filed without substantial delay. Furthermore, we also conclude that all of the claims raised in the petition must be rejected on the merits, and that most claims also must be rejected on various procedural grounds. Accordingly, we shall, in an accompanying order, a copy of which is appended to this opinion, deny in its entirety the petition for a writ of habeas corpus.[1]

## I

We need not recount the facts underlying petitioner's convictions in order to address the procedural question here at issue. It suffices to note that petitioner was convicted in 1983 of murdering a young couple. The prosecution presented evidence at the guilt phase of the trial that petitioner had committed two additional murders, and presented evidence at the penalty phase of the trial that petitioner had committed yet two additional murders. (*Gallego I, supra,* 52 Cal.3d at pp. 140-158.)

## A

The relevant procedural facts are as follows. In early October 1989— approximately 15 months before we filed our opinion on petitioner's automatic appeal—appellate counsel for petitioner timely filed a confidential application for authorization to incur $7,000 in investigation expenses related to potential claims that might be raised in a subsequent petition for a writ of habeas corpus.[2] (See Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, policy 3, Standards governing filing of habeas

---

[1] Justice Brown's concurring and dissenting opinion in this case is addressed primarily to broad issues implicated by our holding in *Robbins, supra,* 18 Cal.4th 770. We address in *Robbins* (*id.* at p. 778, fn. 1) the points raised in the concurring and dissenting opinion in this case.

[2] For purposes of this proceeding only, petitioner has waived confidentiality as to this application for investigative funds and related documents.

corpus petitions and compensation of counsel in relation to such petitions (Policy 3), pt. 2, Compensation standards, std. 2-3.)

The confidential application requested, among other things, a sum to investigate petitioner's competence to stand trial.[3] In July 1990, we authorized an expenditure to investigate one possible claim unrelated to any of the claims presented in the present petition, and denied the remainder of the application, including the request for funds to investigate petitioner's competence to stand trial.[4] Appellate counsel for petitioner did not subsequently file a habeas corpus petition.

After the United States Supreme Court denied a petition for rehearing of its denial of certiorari (*Gallego* v. *California* (1991) 502 U.S. 1009 [112 S.Ct. 650, 116 L.Ed.2d 667]), the superior court set petitioner's execution for early March 1992. In early February 1992, petitioner filed, in propria persona, an application for appointment of counsel and for temporary stay of execution in the United States District Court for the Northern District of California. That court granted the application and subsequently issued several stays of execution while the northern district selection board located and recommended appointment of federal habeas corpus counsel for petitioner.

---

. [3]In this regard, the request by appellate counsel read in relevant part: "In his opening brief, appellant raised the issue of his competency to stand trial. Appellant and his appointed counsel have been questioned by me [appellate counsel] and it is my good faith belief that further investigation would include discussions with psychologists and psychiatrists to determine whether appellant was competent to stand trial."

[4]We denied funding for the proposed "competency" investigation on the ground that petitioner's wholly conclusory proposal (see *ante*, fn. 3) failed to allege "[s]pecific facts that suggest there may be an issue of possible merit" (Policy 3, *supra*, std. 2-4.2)—in other words, because the request failed to disclose triggering facts sufficient to justify investigation of the proposed claim.

On appeal, petitioner raised the related issue of the trial court's asserted error in failing to order a hearing pursuant to Penal Code section 1368 concerning petitioner's competence to stand trial. We observed in our opinion on the direct appeal that although the trial court initially considered requiring defendant to undergo a competency examination pursuant to that statute, defendant thereafter requested, and was permitted, to represent himself at the guilt phase of the trial, and the trial court "later stated that its initial concerns about defendant were incorrect. Indeed, the court concluded that defendant did not appear to be any less competent than 'anyone else in this courtroom.'" (*Gallego I, supra*, 52 Cal.3d at p. 162.) Thereafter, at the hearing on the automatic motion for new trial, the court commented that petitioner "did a rather good job" in his voir dire of the jury, and that generally, "in my opinion [petitioner] did a very fine job in his handling of this matter. [¶] There are some attorneys that I have seen in front of me who wouldn't have done as good a job." In addition, the record contained various other indicators of petitioner's competence at trial: Petitioner was prepared to file several motions as soon as his request for self-representation was granted, requested the assistance of the National Jury Project for jury selection, and moved to retain counsel in his pretrial writ petitions in the Court of Appeal. We concluded, based upon the appellate record, that there was "no 'substantial evidence' . . . of defendant's incompetence to stand trial." (*Ibid.*)

The federal court appointed present counsel to represent petitioner in federal court on August 28, 1992. Petitioner secured funds for, and commenced, a habeas corpus investigation. Thereafter, pursuant to various orders, petitioner's execution was stayed by the federal court for another 19 months—until March 25, 1994—at which time petitioner, on order of the federal court, filed a habeas corpus petition in federal court containing both exhausted and unexhausted claims.

The federal district court denied a motion by the Attorney General to dismiss the unexhausted claims, and granted petitioner 60 days in which to file in this court a petition for a writ of habeas corpus to exhaust those claims. In September 1994, we allowed state-appointed appellate counsel to withdraw and granted the motion of federally appointed counsel for appointment to represent petitioner in this court. Petitioner filed the present petition on October 14, 1994.

### B

■ The petition is not entitled to a presumption of timeliness, because it was not filed "within 90 days after the final due date for the filing of appellant's reply brief on the direct appeal." (Policy 3, *supra*, std. 1-1.1, originally adopted eff. June 6, 1989.) Accordingly, in order to avoid the bar of untimeliness, *petitioner* has the burden of establishing either (i) "absence of substantial delay" (*id.*, std. 1-1.2; see *In re Clark* (1993) 5 Cal.4th 750, 782-784 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*)), (ii) "good cause for the delay" (Policy 3, *supra*, std. 1-2; *Clark, supra,* 5 Cal.4th at pp. 783-787), or (iii) that his claims fall within an exception to the bar of untimeliness (*Clark, supra,* 5 Cal.4th at pp. 797-798). We address herein only one aspect of the first of these alternative showings that petitioner must make to avoid the bar. (We consider all three of these matters in the opinion in the companion case, *Robbins, supra,* 18 Cal.4th 770.)

### II

### A

■ For purposes of addressing the question posed in our order to show cause (whether, and under what circumstances, this court's prior denial of a confidential request for habeas corpus investigation expenses may be relevant to establishing the absence of substantial delay), we need examine only one of the petition's claims. "Claim X" asserts that penalty phase counsel—who entered the trial after petitioner represented himself at the guilt phase—provided constitutionally ineffective assistance of counsel because he failed to raise the issue of petitioner's alleged incompetence to stand trial during the penalty phase of the trial.

Claim X is premised in substantial part upon voluminous "family background" information concerning the social, medical, and criminal histories of petitioner and his relatives, and "expert assessments" by seven mental health professionals—based in large part upon that background information—that petitioner "suffered the effects of long-standing brain impairment and related psychiatric disorders which, particularly under the stress and complexity of litigation, severely impaired his ability to understand the nature of the proceedings or rationally to assist counsel in investigating, preparing and presenting a defense." Although the petition acknowledges that petitioner's trial counsel, when re-appointed to represent petitioner at the penalty phase, had petitioner examined by mental health experts and thereafter moved for a new trial with respect to the guilt phase on the ground that petitioner's waiver of the right to counsel at the guilt phase was constitutionally ineffective because it had not been "intelligent," the petition contends that petitioner's trial counsel nonetheless provided ineffective assistance with regard to this matter because counsel, in arguing the inadequacy of petitioner's waiver of counsel, did not refer specifically to the organic brain damage allegedly disclosed by the then recent medical examination of petitioner, and did not advance the argument that petitioner was incompetent to stand trial at the penalty phase. Petitioner offers the above described "family background" and "expert assessment" information to establish what trial counsel could and should have discovered and how such information would have affected the resolution of a competency claim, had such a claim been advanced.[5]

B

■ As we observe in today's companion case, *Robbins, supra*, 18 Cal.4th at page 787: "*Petitioner* has the burden of establishing the absence of 'substantial delay.' Substantial delay is measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. If a petitioner fails to allege particulars from which we may determine when the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim, he or she has failed to carry the petitioner's burden of establishing that the claim was filed without substantial delay. [¶] A petitioner does not meet his or her burden simply by alleging in general terms that the claim or subclaim recently was discovered, or by producing a declaration from present or

---

[5]The petition also presents three related claims: "Claim I" asserts petitioner was incompetent to waive his right to counsel at the guilt phase of the trial, "Claim II" asserts petitioner was incompetent to stand trial during the guilt phase of the trial, and "Claim III" asserts petitioner was incompetent to stand trial at the penalty phase of the trial.

former counsel to that general effect. He or she must allege, *with specificity,* facts showing when information offered in support of the claim was obtained, and that the information neither was known, nor reasonably should have been known, at any earlier time—and he or she bears the burden of *establishing,* through those specific allegations (which may be supported by relevant exhibits, . . .), absence of substantial delay." (Italics in original.)

 When a petitioner or counsel representing a petitioner actually is aware of information that is sufficient to state a prima facie claim for relief on habeas corpus, that claim should be presented to a court without substantial delay. When, on the other hand, a petitioner or counsel knows or should know only of triggering facts—i.e., facts sufficient to warrant further investigation, but insufficient to state a prima facie case for relief—the potential claim should be the subject of further investigation either to confirm or to discount the potential claim. (*Clark, supra,* 5 Cal.4th at pp. 783-784; see also *Robbins, supra,* 18 Cal.4th at pp. 791-793 [scope of duty to investigate].) And when the petitioner and his or her counsel lack triggering facts concerning a particular claim, counsel has no duty to investigate that claim.

When further investigation is required, such investigation may, and often does, necessitate expenditure of funds and employment of investigators and experts. Private appointed counsel, however, is under no obligation to fund such an investigation out-of-pocket. Pursuant to policies in effect since June 6, 1989 (see *post,* fn. 7), the state has funded capital case habeas corpus investigation by private appointed counsel as follows: If the potential petitioner—as in this matter—was represented by counsel appointed by this court on a traditional "allowable hours and costs" basis, counsel was permitted to incur (and seek reimbursement for) reasonable investigation expenses up to $3,000 without prior court approval. (Policy 3, *supra,* former std. 2-2.1, now std. 2-2.3 (see *post,* fn. 7).) Alternatively (or in addition, if the $3,000 base amount already was expended), such counsel had the opportunity—as was done here—to file with this court a "confidential request for authorization to incur expenses to investigate potential habeas corpus issues."[6] (Policy 3, *supra,* former stds. 2-2.2 to 2-4, now stds. 2-2.4 to 2-4.)[7]

When counsel appointed by this court to represent a petitioner on a traditional "allowable hours and costs" basis timely filed a request for

---

[6]In making such a request, counsel for the prospective petitioner was required to set out, among other things, (i) the issues to be explored; (ii) specific facts that suggest there may be an issue of possible merit, and (iii) an itemized list of the expenses requested for each issue of the potential habeas corpus petition. (Policy 3, *supra,* stds. 2-4.1 to 2-4.3 (see *post,* fn. 7).)

[7]Effective January 22, 1998, we amended the "Compensation standards" of Policy 3 and the related "Guidelines for Fixed Fee Appointments, on Optional Basis, to Automatic Appeals and Related Habeas Corpus Proceedings in the California Supreme Court," Guideline 2 Incidental and Investigative Expenses (Fixed Fee Guideline 2), pursuant to newly enacted Government Code section 68656, subdivision (b). Under the revised "Compensation

funding of a specific proposed habeas corpus investigation fully disclosing all asserted triggering information in support of the proposed investigation, and this court denied the request in whole or in part, counsel neither was obliged nor expected to seek reconsideration, unless counsel could produce additional documentation or explanation to support the proposed investigation. Our denial of funding in that situation indicates our determination that the request failed to disclose triggering facts warranting additional investigation. Because counsel was (and is) not required personally to fund a habeas corpus investigation, a petitioner in this situation cannot reasonably be expected to have discovered facts that could be obtained only through additional investigation. And because a petitioner who has only information that does *not* rise to the level of a prima facie claim is not required or expected to file a petition embodying such a claim, it cannot be said that such a petitioner reasonably should have filed a petition raising the undeveloped claim at that earlier time. Only if and when the petitioner thereafter acquires additional information offered in support of a prima facie claim, either after obtaining investigation funding from another source or by learning of the information in some other manner, does the time for promptly filing the claim commence.

This does not mean, however, that a prospective petitioner or his counsel whose request for investigation funds has been denied and who lacks triggering information justifying investigation into any unperfected claim never should file a habeas corpus petition. If such a petitioner or counsel is, or should be, aware of some claims as to which a prima facie case *may* be stated, and there is no ongoing bona fide investigation into other potentially meritorious claims (see *Robbins, supra,* 18 Cal.4th at pp. 805-806), a petition advancing the known claims "must be presented promptly:" (*Clark, supra,* 5 Cal.4th at p. 784.)

It follows that, with regard to the "substantial delay" prong of our timeliness inquiry, a petitioner may establish the absence of substantial delay by showing that he or she previously was unaware of information offered in support of a given claim, and reasonably failed to discover earlier the information offered in support of that claim because he or she timely

---

standards" of Policy 3 and Fixed Fee Guideline 2, counsel appointed for habeas corpus representation pursuant to a traditional "allowable hours and costs" agreement, or pursuant to a "fixed fee agreement," will be reimbursed—without the necessity of prior approval from this court—for reasonably incurred habeas corpus investigation expenses up to a cap of $25,000 prior to issuance of an order to show cause. (See Policy 3, *supra,* std. 2-2.1; Fixed Fee Guideline 2 Incidental and Investigative Expenses.)

requested but was denied funding to investigate that claim.[8] In other words, we cannot conclude that a petitioner "reasonably should have known" of information offered in support of a claim if, because the petitioner reasonably lacked triggering facts supporting an investigation of that claim and was denied funds with which to obtain information, he or she was unable to investigate the claim.[9]

Respondent's objection to this conclusion is unconvincing. It asserts that "[a] petitioner who *withholds presentation of habeas corpus claims* in the hope of obtaining investigation funding from some other source has substantially delayed presentation of the claims" (italics added), and that "a petitioner's failure or inability to allege the minimal, basic facts necessary to obtain funds to conduct additional investigation cannot justify [or establish the absence of substantial] delay in presenting claims on state habeas corpus." As explained above, however, a petitioner, having been denied requested funds to investigate an identified "potential" but wholly undeveloped claim that does not state a prima facie basis for relief, properly may decline to file a petition containing that as-yet unsubstantiated claim. In so doing, the petitioner does not "withhold" a claim, because, as to that undeveloped and unsubstantiated claim, he or she has no prima facie case to present.

## C

■ Having concluded that, as a general matter, this court's denial of a request for funds to investigate a habeas corpus claim may be relevant to the timeliness of a subsequently filed habeas corpus claim, we shall determine whether petitioner has established that Claim X was not substantially delayed. For the reasons set out below, we conclude that petitioner has failed to do so.

---

[8] With regard to a petitioner who earlier presented a petition containing a claim supported by certain information, and who later presents a subsequent petition raising the same or an analogous claim supported by *additional* information, a demonstration that the petitioner reasonably failed to discover the additional information—as a result of a denial of a request for funds to investigate the claim—also may be relevant to application of the bars of successiveness (see *Robbins, supra,* 18 Cal.4th at p. 788, fn. 9) or repetitiveness (see *In re Miller* (1941) 17 Cal.2d 734, 735 [112 P.2d 10]), as well as to the bar of untimeliness.

[9] By so observing, we do not suggest that we erred in denying funds to investigate the claim—indeed, we did not err. (See *ante,* fns. 3 & 4.) We simply recognize that unavailability of funding may, in some circumstances, support a conclusion that a petitioner cannot reasonably have been expected earlier to have obtained information offered in support of a claim.

1. *When was the information offered in support of Claim X obtained,*
*and was it known, or should it reasonably have been known, by*
*petitioner at any earlier time?*

Neither in the petition, the "informal reply" (Cal. Rules of Court, rule 60), nor in the traverse (see *Robbins, supra,* 18 Cal.4th at p. 789) does petitioner establish when the information offered in support of Claim X was obtained, and that the information was neither known, nor reasonably should have been known, at any earlier time.

The petition asserts *generally* that "[d]uring the federal habeas [corpus] investigation, facts were uncovered which indicated that Petitioner had meritorious habeas [corpus] claims," and that all claims were "brought . . . within a reasonable time after [current counsel] became aware of the factual bases for the claims presented in the petition." The petition also asserts in *general terms* that because this court denied the majority of the confidential 1989 habeas corpus funding application, and because prior (appellate) counsel could not afford to "finance a habeas [corpus] investigation for [petitioner] out of his own pocket[,] . . . no plenary investigation could be conducted" on petitioner's behalf. Subsequently, in his traverse, petitioner asserts that he proposed in his confidential 1989 request to investigate the issue of his competence to stand trial, and that we denied funding for that purpose. (See *ante,* fns. 3 & 4.)

The petition further asserts that after counsel were appointed by the federal court, they were forced to "familiarize themselves with the extensive record in the case, conduct a plenary habeas corpus investigation,[10] and prepare the Federal Petition. This process unearthed a great deal of factual information and many potentially meritorious claims which were unknown during the direct appeal. Petitioner presented these claims to the Federal Court and to this Court in a timely manner."

Petitioner offers in support of these general allegations the declaration of his appellate counsel, who asserts: "Prior to the investigation pursued in conjunction with the federal habeas [corpus] petition starting in 1992, I was

---

[10]Petitioner asserts that his "plenary" investigation was required by *McCleskey* v. *Zant* (1991) 499 U.S. 467 [111 S.Ct. 1454, 113 L.Ed.2d 517]. As we observe today in *Robbins, supra,* 18 Cal.4th at page 793, footnote 14, "The opinion in *McCleskey* states only that a 'petitioner must conduct a *reasonable* and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition.' (*Id.* at p. 498 [111 S.Ct. at p. 1472], italics added.) *McCleskey* nowhere suggests that a 'reasonable' investigation is one grounded on mere speculation or hunch, without any basis in triggering fact, and no decision of which we are aware has recognized or imposed such an unfocused and broad duty."

not aware of any information to indicate a factual or legal basis for" various claims, including Claim X.[11]

Viewed singly or together, these general allegations fail to establish when the information offered in support of Claim X was obtained, and that the information was neither known, nor reasonably should have been known, at any earlier time.

Petitioner's informal reply contains allegations that, although somewhat less general, still are insufficiently specific. In that filing, petitioner asserts *generally* that neither he nor his prior or present counsel knew of the facts offered in support of the unexhausted claims—including Claim X and related claims—"until [present] counsel undertook the federal habeas [corpus] investigation in 1993 and early 1994." Thereafter, petitioner's informal reply asserts—again, in general terms—that "none of the key facts underlying the unexhausted claims [pleaded] in the Petition were known or could have been known until a matter of months before the Petition was filed [in mid-October 1994]."

Petitioner complains in his informal reply that "Respondent does not get down to details. For example, Respondent never states exactly what Petitioner or his counsel knew or should have known with respect to any claim, or when they should have known it. . . . As to *all* such details, Respondent is noticeably silent." (Italics in original.) Of course, as explained above, the burden is on *petitioner* to establish the absence of substantial delay, and he, not respondent, must "get down to details." And, as noted, he fails to do so in his petition, his informal reply, or his traverse.[12]

---

[11]Appellate counsel's declaration also asserts that related Claims I and II (alleged incompetence to waive right to counsel at the guilt phase of the trial, and alleged incompetence to stand trial during the guilt phase of the trial) are "based in part on facts of which I was not aware prior to the federal habeas [corpus] investigation." The declaration does not assert that related Claim III (alleged incompetence to stand trial at the penalty phase of the trial) is based, in whole or in part, on information of which counsel previously was unaware.

[12]In introducing its discussion of timeliness, the petition purports to "incorporate by reference the allegations contained in the other sections of this Petition, and the facts set forth in the Exhibits hereto." As we explain today in *Robbins, supra,* 18 Cal.4th at page 799, footnote 21, "Petitioners should in the future clearly present *in the petition* specific allegations (with appropriate references to, and description of, any supporting exhibits that may be provided) concerning when information offered in support of *each claim and subclaim* was obtained, was known, and reasonably should have been known." (Italics in original.) A petitioner does not allege, with specificity, absence of substantial delay merely by generally "incorporating by reference" all of the facts set forth in the exhibits.

### 2. *Has petitioner established that Claim X was presented without substantial delay?*

Because petitioner has not alleged with specificity facts showing when he obtained the information offered in support of Claim X, and that the information was neither known, nor reasonably should have been known, at any earlier time, he has not established the absence of substantial delay as to that claim.[13]

### D

We confined the order to show cause in this matter to the procedural issue discussed and resolved above. Accordingly, we do not address herein the merits of the claims raised in the petition, nor do we address herein the application of any procedural bar other than that of untimeliness to any claim. The petition for a writ of habeas corpus will be resolved, as is the normal procedure for such matters, by summary order (see *Clark, supra,* 5 Cal.4th at p. 781), a copy of which is appended to this opinion. ▪ For the guidance of the parties, however, we shall address briefly and in broad outline the timeliness of the other claims presented in the petition.

The vast majority of the claims rely *exclusively* upon the appellate record. These claims were known or reasonably should have been known to immediately preceding counsel, and they should have been presented to this court, if at all, in a habeas corpus petition shortly after we denied petitioner's request for investigation funds. (See *ante,* at pp. 833-835.)

In addition to Claim X, discussed above, three other claims and one subclaim (related "competency" Claims I, II, and III, described *ante,* fn. 5, and unrelated "Claim XI, part (C)," asserting that penalty phase counsel

---

[13]As explained in *Robbins, supra,* 18 Cal.4th at pages 805-806, a petitioner may establish good cause for substantial delay in the filing of a claim if he or she was conducting a bona fide ongoing investigation (based upon known triggering facts) into another claim or claims and withheld the completed claim to avoid the piecemeal presentation of claims. In the present case, petitioner does not allege or establish that he or his counsel was conducting a bona fide "ongoing investigation" into any matter between July 1990, when we denied the bulk of petitioner's confidential request for funds, and August 1992, when federal habeas corpus counsel was appointed, and does not assert that any delay in the presentation of the claims at issue here can be justified on the basis of an "ongoing investigation of another claim" rationale.

Contrary to the concurring and dissenting opinion of Justice Kennard, as we also explain in *Robbins, supra,* 18 Cal.4th 770, the ongoing investigation component of this basis for good cause is not "new," and there is no unfairness in applying that requirement to petitioner. Nor does our application of the ongoing investigation requirement provide a reason or justification for reopening prior orders of this court that have barred a claim as untimely.

In sum, petitioner has not established good cause for delay on this or any other ground.

were constitutionally ineffective for failing to contest the other-homicides aggravating evidence) are based in substantial part upon information outside the appellate record.

As to *all* claims and subclaims raised, petitioner fails to carry his burden of establishing when information offered in support of the claim or subclaim was obtained, and that the information was neither known, nor reasonably should have been known, at any earlier time. Accordingly, as to all claims and subclaims, petitioner fails to establish the absence of substantial delay.

Petitioner also fails to carry his burden of establishing good cause for the delay. (See *Robbins, supra,* 18 Cal.4th at pp. 805-811, and *ante,* fn. 13.) Finally, as to each claim and subclaim raised in the petition, petitioner fails to demonstrate that any of the four exceptions to the bar of untimeliness applies. (See *Clark, supra,* 5 Cal.4th at pp. 797-798; *Robbins, supra,* 18 Cal.4th at pp. 811-813.)[14] Accordingly, all claims and subclaims raised in the petition will be denied as untimely,[15] and on other applicable grounds.

---

[14]For guidance concerning application of the exceptions to the bar of untimeliness, we note the following: Although we conclude that each of the claims concerning petitioner's incompetence (Claims I, II, III, and X) fails to state a prima facie case for relief under state or federal law, for purposes of applying the first three exceptions to the bar of untimeliness set out in *Clark, supra,* 5 Cal.4th at pages 797-798, we "assume . . . that a federal constitutional error is stated, and we shall find the exception inapposite if, based upon our application of state law," the exception is not met. (*Robbins, supra,* 18 Cal.4th at pp. 811, 812, fn. 32.) Pursuant to this approach, no exception to the bar of untimeliness applies here.

First, petitioner does not demonstrate that his alleged incompetence to waive counsel at the guilt phase of the trial or to stand trial constitutes "error of constitutional magnitude" leading to "a trial that was so fundamentally unfair that absent the error *no reasonable judge or jury would have convicted the petitioner.*" (*Clark, supra,* 5 Cal.4th at p. 797, italics added.) The evidence underlying petitioner's conviction was overwhelming, and there is no indication that the alleged errors substantially affected the evidentiary showing. The exception is inapposite.

Second, petitioner's alleged incompetence to waive counsel at the guilt phase of the trial or to stand trial does not suggest, much less establish, that petitioner "actually is innocent of the crime or crimes of which the petitioner was convicted" (*Clark, supra,* 5 Cal.4th at pp. 797-798), and it does not constitute "irrefutable evidence of innocence of the offense or the degree of offense of which the petitioner was convicted." (*Id.* at p. 798, fn. 33.)

Third, based upon the facts of this case and the allegations presented in the petition, petitioner's alleged incompetence to waive counsel at the guilt phase or to stand trial did not result in a death penalty that was "imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death." (*Clark, supra,* 5 Cal.4th at p. 798.)

Finally, petitioner's alleged incompetence to waive counsel at the guilt phase of the trial or to stand trial does not implicate the fourth *Clark* exception—that the petitioner was convicted or sentenced under an invalid statute. (*Clark, supra,* 5 Cal.4th at p. 798.)

[15]As we explain in *Robbins, supra,* 18 Cal.4th 770, we shall not herein impose the bar of untimeliness as to any subclaim of the petition that asserts ineffective assistance of

## III

The order to show cause is discharged.

Baxter, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J., Concurring.**—I concur in the result.

I agree that we must discharge the order to show cause. I do so because I believe that petitioner has not alleged specific facts that would entitle him to relief on habeas corpus. I would rest on the merits, and would not proceed to any of the so-called "procedural bars," including that of untimeliness. (See *In re Robbins* (1998) 18 Cal.4th 770, 815-817 [77 Cal.Rptr.2d 153, 959 P.2d 311] (conc. opn. of Mosk, J.).)

**KENNARD, J., Concurring and Dissenting.**—I concur in the discharge of the order to show cause and in the denial of the petition for a writ of habeas corpus. But, as in the companion case of *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311] (*Robbins*), I do not agree with everything stated in the majority opinion, which addresses certain questions concerning the timeliness requirement for habeas corpus claims, and in particular the significance of this court's denial of a confidential request by appointed counsel for authorization to incur expenses to investigate potential habeas corpus claims.

The majority states that if petitioner or petitioner's counsel knows of claims that may state a prima facie case for relief, counsel should promptly submit a habeas corpus petition presenting those claims (which the majority refers to variously as "known," "completed," "developed," or "perfected") unless there is an "ongoing bona fide investigation into other potentially meritorious claims." (Maj. opn., *ante*, at p. 834.) In a footnote, the majority states that if appointed counsel's habeas corpus investigation of potential claims reaches an impasse because this court has denied funding for further investigation, counsel must then present any known claims. (Maj. opn., *ante*, at p. 838, fn. 13.) Put another way, counsel may not delay presentation of known claims unless counsel is actually engaged in an *ongoing investigation* of potential claims, and if our denial of investigation funds means that counsel may not immediately proceed with investigation, then any known claim must be promptly presented to this court. (*Ibid.*) In the companion case, *Robbins*, the majority appears to assert that this court stated or implied the substance of this ongoing-investigation rule in *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*). (*Robbins, supra,* 18 Cal.4th at pp. 806-807, fn. 28.)

immediately preceding appellate or habeas corpus counsel. (See *Robbins, supra,* 18 Cal.4th at p. 815, fn. 35.)

I do not agree that this court's decision in *Clark, supra,* 5 Cal.4th 750, afforded adequate notice of the substance of the majority's ongoing-investigation rule. Also, as stated by the majority, the ongoing-investigation rule is overly precise and rigid. Because the rule has not been previously announced, this court should not apply it to pending habeas corpus petitions without giving petitioners and their counsel an opportunity to amend their petitions, if they can, to cure the deficiencies. I will explain each of these points in turn.

In *Clark,* this court stated: "If the petition is delayed because the petitioner is not able to state a prima facie case for relief on all of the bases believed to exist, the delay in seeking habeas corpus relief may be justified when the petition is ultimately filed if the petitioner can demonstrate that (1) he had good reason to believe other meritorious claims existed, and (2) *the existence of facts supporting those claims could not with due diligence have been confirmed at an earlier time.*" (*Clark, supra,* 5 Cal.4th 750, 781, fn. omitted, italics added.) To the same effect, this court said: "When the factual basis for a claim is already known, the claim must be presented promptly *unless facts known to counsel suggest the existence of other potentially meritorious claims which cannot be stated without additional investigation.*" (*Id.* at p. 784, italics added.) In a footnote, this court added these observations: "The delay will not be deemed justified, however, unless the petitioner demonstrates that there was good reason to believe that further investigation would lead to facts supportive of a clearly meritorious claim. Nor will the delay be deemed justified if, notwithstanding the existence of substantial, potentially meritorious claims, the petitioner delays filing the petition in order to investigate potential claims of questionable merit." (*Id.* at p. 781, fn. 17.)

Nowhere in *Clark, supra,* 5 Cal.4th 750, did this court specify that knowledge of the existence of potentially meritorious but unperfected claims would constitute good cause for delay in the presentation of perfected claims only if the petitioner or habeas corpus counsel was engaged in an ongoing bona fide investigation of the potentially meritorious but unperfected claims throughout the period of delay. The cited *Clark* text and footnote imply, at most, that substantial delay in the presentation of known claims is justified only if it is *for the purpose of* investigation and that a petitioner must at all stages proceed with "due diligence"; *Clark* does not state or imply that investigation must be ongoing throughout the period of delay.

The ongoing-investigation rule as stated by the majority is overly precise and rigid because habeas corpus petitioners and their counsel, after this court's denial of a confidential request for investigation funds, may proceed with due diligence, for the purpose of investigating potentially meritorious

claims, even though they are then unable to commence or proceed with the investigation. For example, counsel may proceed with diligence to obtain funding for the investigation from alternative sources. Funds may be obtainable from the petitioner's relatives, from private organizations, or from the federal courts. Here, for example, petitioner proceeded to federal court where his counsel applied for and received substantial funding with which the investigation of potential claims was undertaken and completed. (Maj. opn., *ante*, at pp. 830-831.) A reasonable delay occasioned by a diligent search for alternative funds from individuals or from public or private entities that petitioner and counsel reasonably anticipate will provide such funds is, in my view, good cause for substantial delay in the presentation of previously known claims. To the extent the majority decides otherwise, I disagree.

Finally, to the extent that the majority has narrowed the diligence requirement articulated in *Clark, supra,* 5 Cal.4th 750, which required only that the delay be *for the purpose of* investigation (and not that the petitioner be actually engaged in an ongoing investigation throughout the period of delay), and that the petitioners and their counsel at all times proceed with "due diligence," the requirement may not in fairness be applied retroactively to bar habeas corpus claims as untimely. To the extent the majority decides otherwise, I disagree.

**BROWN, J.,** Concurring and Dissenting.—I concur in the discharge of the order to show cause.

I express no opinion on the substantive merits of the discussion regarding "good cause" and "substantial delay." In my view, attempting to clarify issues of procedure relating to the timely filing of habeas corpus petitions in capital cases is ill-advised and counterproductive. I therefore decline to endorse any part of the enterprise. As the federal habeas reform model illustrates, creating a Byzantine system of procedural hurdles, each riddled with exceptions and fact-intensive qualifications, only undermines their intended purpose. While I do not countenance abuse of the writ, efforts to control it must be measured by their impact on the goals they purport to serve: integrity of judgments, finality, and comity. Thus far, none have been advanced by the "guidance" provided in *In re Harris* (1993) 5 Cal.4th 813, 829 [21 Cal.Rptr.2d 373, 855 P.2d 391] (*Harris*) and *In re Clark* (1993) 5 Cal.4th 750, 768 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*). As long as our intentions remain ambivalent and our goals at odds, we can expect no better results regardless of how many more "procedural" orders to show cause we issue and discharge.

The recurrent theme of *Clark* is "the importance of finality of judgments [citation], and the interest of the state in the prompt implementation of its

laws. [Citation.]" (*Clark, supra,* 5 Cal.4th at p. 764; see *id.* at pp. 766, 769, 770, 774-775, 776, 783, 786.) Procedural bars foster these goals in part by curtailing abusive and dilatory writ practice. By invoking them, we may also, indirectly at least, "seek to prevent federal courts from reviewing federal constitutional claims, especially in capital cases," thus further enhancing the prospects for finality. (*Id.* at p. 802 (conc. and dis. opn. of Mosk, J.).) Nevertheless, in light of post-*Clark* experience, it should be obvious that the means conflict irreconcilably with the ends. As far as I can determine, to date, not one procedural bar cited by this court in a capital case has precluded federal court review on the merits or forestalled a successive petition. Concomitantly, our citations to *Clark* and *Harris* have caused years of fruitless litigation up and down the federal court system, delaying finality and impairing any sense of comity. (See fn. 7, *post.*) Perhaps, the time has come to acknowledge the fault is not in our stars but in our ambivalence toward institutional priorities: As set forth in *Clark,* the principles on which we reject habeas corpus petitions as untimely and successive simply do not translate into a state ground adequate to foreclose federal review on the merits. Moreover, because the death penalty is qualitatively different, procedural impediments are unlikely to deter counsel who belatedly discover a potentially meritorious claim.

I

Deference to state court procedural bars is based on the "well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts. [Citations.]" (*Wainwright* v. *Sykes* (1977) 433 U.S. 72, 81 [97 S.Ct. 2497, 2503, 53 L.Ed.2d 594].) However, "a state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.' [Citation.] State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." (*Hathorn* v. *Lovorn* (1982) 457 U.S. 255, 262-263 [102 S.Ct. 2421, 2426, 72 L.Ed.2d 824]; *Johnson* v. *Mississippi* (1988) 486 U.S. 578, 587 [108 S.Ct. 1981, 1987, 100 L.Ed.2d 575].) "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim. [Citations.]" (*Ford* v. *Georgia* (1991) 498 U.S. 411, 423-424 [111 S.Ct. 850, 857, 112 L.Ed.2d 935].) Moreover, a state may not invoke "a rule unannounced at the time of" a purported default. (*Id.* at p. 424 [111 S.Ct. at p. 858].)

"As a corollary to the requirement of strict or regular compliance, a procedural rule will not bar federal review if it is one that the state can decide whether to assert as a matter of discretion. [Citation.]" (*Deere* v.

*Calderon* (C.D.Cal. 1995) 890 F.Supp. 893, 896.) That is, application of the procedural rule must be based "at minimum, [on] standards having compulsory force [that] have been articulated and applied with regularity." (*Karis* v. *Vasquez* (E.D.Cal. 1993) 828 F.Supp. 1449, 1467 (*Karis*).) Although "procedural rules need not be utterly mechanical," any judicial discretion must constitute "the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits." (*Morales* v. *Calderon* (9th Cir. 1996) 85 F.3d 1387, 1392 (*Morales*).)

However state courts define their rules, federal courts will decide if those rules constitute adequate state grounds. " '[T]he question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question.' [Citation.]" (*Johnson* v. *Mississippi, supra,* 486 U.S. at p. 587 [108 S.Ct. at p. 1987]; see, e.g., *Ford* v. *Georgia, supra,* 498 U.S. at pp. 423-424 [111 S.Ct. at p. 857]; see also *Harmon* v. *Ryan* (9th Cir. 1992) 959 F.2d 1457, 1461 ["The doctrine of procedural default is based on comity, not jurisdiction, and the federal courts retain the power to consider the merits of procedurally defaulted claims. [Citation.]"].) Thus, federal courts will always have the last word. As one district court has observed, "Ninth Circuit law on the independence of alternative procedural holdings, like [those relying on *Harris, supra,* 5 Cal.4th 813], is still evolving." (*Odle* v. *Calderon* (N.D.Cal. 1995) 884 F.Supp. 1404, 1412; see also *Morales, supra,* 85 F.3d at p. 1389, fn. 6.) Moreover, since procedural default is an affirmative defense on which the state predicates a motion to dismiss, "ordinarily under such circumstances the burden rests with the proponent of the defense and of the motion." (*Karis, supra,* 828 F.Supp. at p. 1463, fn. 21.)

We must also recognize the institutional mind-set of the federal courts that traces its roots to the post-Civil War Judiciary Act of 1867 (Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385-386) by which Congress first extended federal habeas corpus to state prisoners. (See generally, *Fay* v. *Noia* (1963) 372 U.S. 391, 415-426 [83 S.Ct. 822, 836-842, 9 L.Ed.2d 837].) Despite initial "jurisdictional" limitations on the scope of the writ, this historical context substantially informs a perception of the federal courts as ultimate guardians of constitutional rights—an attitude that probably reached its high-water mark in *Fay* v. *Noia,* when the Supreme Court declined to foreclose merit review of a constitutional claim the petitioner had defaulted in state court. (*Id.* at pp. 426-435 [83 S.Ct. at pp. 842-847].) Although the rules are stricter now (see *Keeney* v. *Tamayo-Reyes* (1992) 504 U.S. 1, 4 [112 S.Ct. 1715, 1717, 118 L.Ed.2d 318]; *Wainwright* v. *Sykes, supra,* 433 U.S. at pp. 87-88 [97 S.Ct. at p. 2507]), review is not precluded if a state prisoner establishes cause for the default and resulting prejudice or, despite lack of cause, claims factual

innocence. (*McCleskey* v. *Zant* (1991) 499 U.S. 467, 493-496 [111 S.Ct. 1454, 1469-1471, 113 L.Ed.2d 517].)

With respect to our timeliness bars, federal courts have consistently refused to recognize them in cases in which the default predated *Clark* because they were applied as a matter of discretion without regularity and uniformity. (See, e.g., *Morales, supra*, 85 F.3d at pp. 1389-1391; *Siripongs* v. *Calderon* (9th Cir. 1994) 35 F.3d 1308, 1317-1318; cf. *Fields* v. *Calderon* (9th Cir. 1997) 125 F.3d 757, 761-765 [for the same reason finding *Dixon* bar (*In re Dixon* (1953) 41 Cal.2d 756 [264 P.2d 513]) inadequate for cases appealed prior to *Harris*].) The fate of post-*Clark* cases remains uncertain, although the Ninth Circuit Court of Appeals's discussion in *Morales* does not augur well: "Neither the Standards [Governing Filing of Habeas Corpus Petitions] themselves nor California cases construing those Standards create an unambiguous rule on timeliness beyond the [presumption of timeliness for petitions filed within 90 days of the reply brief (std. 1-1.2)]. Further, because the California Supreme Court does not provide reasons for its denials of petitions of habeas corpus on timeliness grounds, it is equally difficult to discern what criteria the state court applies when ruling on the timeliness of a petition filed beyond the . . . 90 day period." (*Morales, supra*, 85 F.3d at p. 1390.) Although the standards provide that a habeas corpus petition should be filed "without substantial delay," "[n]either the Standards nor [case authority] established what amount of delay the court would consider 'substantial,' nor did either set out criteria for determining 'good cause' to excuse such delay. They also did not prescribe whether and when untimeliness might be waived altogether, even though good cause had not been shown." (*Morales, supra*, 85 F.3d at p. 1391; see *Karis, supra*, 828 F.Supp. at p. 1463, fn. omitted [noting this court has yet to "articulate[] parameters within which [to exercise] discretion to find an explanation or justification [for filing delay] sufficient"].) In other words, as currently articulated, our timeliness bars are too vague to constitute adequate state grounds.[1]

Although today's decisions are intended to respond to the deficiencies outlined in *Morales*, they can only have the opposite effect by creating more sources of litigation, hence more delay. If we are to take the Ninth Circuit at its word, many more forays will be necessary, although probably not sufficient, in the quest for adequate state grounds. Rather than clarity, each will

---

[1]In *Deere* v. *Calderon, supra*, 890 F.Supp. at page 900, the court determined "that each of the denials on grounds of untimeliness in [surveyed cases postdating *Clark*] was discernible, regular, and consistent." *Deere* is still pending in the district court, and the Ninth Circuit has yet to pass on its determination. Another district court, however, has criticized the methodology used in *Deere* and reached the opposite conclusion. (*Coleman* v. *Calderon* (N.D.Cal.) 1996 WL 83882, pp. *3-*4.)

breed further uncertainty and obfuscation, protracting habeas corpus proceedings at every turn. That being the case, whither finality?

## II

In theory, consistent application of procedural bars imposes discipline on defense counsel and discourages abusive tactics. (See *Clark, supra,* 5 Cal.4th at pp. 769-774.) However, our efforts to curb lawyer excesses may come at too high a cost—at the expense of reasonably expeditious resolution of these cases. Lest this sound alarmist, the United States Supreme Court's own futile attempts to tame habeas corpus litigation provides a painful object lesson.

Professor Barry Friedman, a longtime follower of the high court's habeas corpus jurisprudence, has persuasively documented the failure of the court's reform efforts, beginning with *Stone* v. *Powell* (1976) 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067], in achieving its stated goals—fairness, finality, federalism, and judicial economy. (Friedman, *Failed Enterprise: The Supreme Court's Habeas Reform* (1995) 83 Cal.L.Rev. 485 (Friedman); see also Lay, *The Writ of Habeas Corpus: A Complex Procedure for a Simple Process* (1993) 77 Minn. L.Rev. 1015, 1018-1019 (Lay).) The sense of *déjà vu* in reading Friedman should be enough to prompt reconsideration of our efforts to achieve similar ends.

*Brecht* v. *Abrahamson* (1993) 507 U.S. 619 [113 S.Ct. 1710, 123 L.Ed.2d 353]is particularly illustrative. In that case the court rejected the *Chapman* harmless error standard (*Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]) on collateral review in favor of a less rigorous test derived from *Kotteakos* v. *United States* (1946) 328 U.S. 750 [66 S.Ct. 1239, 90 L.Ed. 1557]. By giving greater deference to state court judgments, that change seems on the surface to serve the court's stated ends. In reality, it undermines all of them. *Kotteakos* requires a court finding a constitutional violation to review the entire state trial record to assess whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' [Citation.]" (*Brecht* v. *Abrahamson, supra,* 507 U.S. at p. 631 [113 S.Ct. at p. 1718].) In her dissent, Justice O'Connor noted several deficiencies with the new rule. "[E]ven on its own terms the Court's decision buys the federal courts a lot of trouble. From here on out, prisoners undoubtedly will litigate—and judges will be forced to decide— whether each error somehow might be wedged into the narrow potential exception the Court mentions in a footnote today.[2] Moreover, since the Court only mentions the *possibility* of an exception, all concerned must also

---

[2]The referenced footnote states, "Our holding ·does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is

address whether the exception exists at all." (507 U.S. at p. 655 [113 S.Ct. at p. 1731] (dis. opn. of O'Connor, J.).) She further concluded, *"Kotteakos'* threshold is no more precise than *Chapman*'s; each requires an exercise of judicial judgment that cannot be captured by the naked words of verbal formulae. *Kotteakos*, it is true, is somewhat more lenient; it will permit more errors to pass uncorrected. But that simply reduces the number of cases in which relief will be granted. It does not decrease the burden of identifying those cases that warrant relief." (*Id.* at p. 656 [113 S.Ct. at p. 1731].)

In this same vein, Friedman notes, *"Brecht* is an open invitation to the state to raise the question of harmfulness in all habeas proceedings in which a constitutional error is found. . . . [B]y giving the state greater incentive to defend constitutionally questionable convictions, finality is not clearly advanced, and judicial resources are taxed." (Friedman, *supra*, 83 Cal.L.Rev. at p. 500, fns. omitted.)

Compounding the difficulties, the court subsequently explained that despite the more lenient standard of review, the beneficiary of the error still bears the burden of demonstrating harmlessness, as required under *Chapman* v. *California, supra*, 386 U.S. at page 24 [87 S.Ct. at page 828]. (*O'Neal* v. *McAninch* (1995) 513 U.S. 432, 437-444 [115 S.Ct. 992, 995-998, 130 L.Ed.2d 947].) Accordingly, habeas relief should be granted when "record review leaves the conscientious judge in grave doubt about the likely effect of an error on the jury's verdict." (*Id.* at p. 435 [115 S.Ct. at p. 994].) As Justice Scalia has suggested, this determination "does not possess" "a black-and-white character . . . , any more than other [harmless error] determinations possess it." (*California* v. *Roy, supra*, 519 U.S. at p. 8 [117 S.Ct. at p. 340] (conc. opn. of Scalia, J.).) Indeed, some suggest the shades of gray are potentially infinite. (See Friedman, *supra*, 83 Cal.L.Rev. at p. 500; see also *Brecht* v. *Abrahamson, supra*, 507 U.S. at pp. 640-644 [113 S.Ct. at pp. 1723-1725] (conc. opn. of Stevens, J.).)

Friedman also cites *Teague* v. *Lane* (1989) 489 U.S. 288 [109 S.Ct. 1060, 103 L.Ed.2d 334] and *Stone* v. *Powell, supra*, 428 U.S. 465, as prime

---

combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceedings as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict. [Citation.]" (*Brecht* v. *Abrahamson, supra*, 507 U.S. at p. 638, fn. 9 [113 S.Ct. at p. 1722]; see also *McCleskey* v. *Zant, supra*, 499 U.S. at p. 494 [111 S.Ct. at p. 1470] [recognizing exception to "cause and prejudice" standard for factual innocence]; cf. *Clark, supra*, 5 Cal.4th at pp. 796-797 [exceptions to timeliness bars].)

The court also built into the equation another point of contention: whether the constitutional violation involved "trial error" subject to the *Kotteakos* standard or " 'structural defects in the constitution of the trial mechanism, which defy analysis by [any] "harmless-error" standards.' [Citation.]" (*Brecht* v. *Abrahamson, supra*, 507 U.S. at p. 629 [113 S.Ct. at p. 1717]; cf. *California* v. *Roy* (1996) 519 U.S. 2 [117 S.Ct. 337, 136 L.Ed.2d 266].)

examples of federal habeas reform gone awry. Under *Teague*, a state prisoner seeking federal habeas relief may not receive retroactive benefit of a "new rule" of law. As even members of the high court acknowledge, the doctrine "has proven hard to apply" even though the court has "explained its crucial terms a number of ways." (*Graham* v. *Collins* (1993) 506 U.S. 461, 505 [113 S.Ct. 892, 918, 122 L.Ed.2d 260] (dis. opn. of Souter, J.).) With considerably less understatement, Friedman concludes "that *Teague* has spawned far more confusion than it has eliminated, and that it has set courts and lawyers off spending hours and pages of arguments and briefs on an incoherent, unproductive, and ultimately unworkable task." (Friedman, *supra*, 83 Cal.L.Rev. at p. 519; see Lay, *supra*, 77 Minn. L.Rev. at p. 1042.) The only certain result is additional delay. (See, e.g., Friedman, *supra*, at pp. 538-539, fn. 356 [chronicling several years of further state court proceedings following *Graham* v. *Collins*, *supra*, 506 U.S. 461].)

In *Stone* v. *Powell*, *supra*, 428 U.S. 465, the Supreme Court held that Fourth Amendment claims would not be cognizable on habeas corpus if there had been "an opportunity for full and fair litigation" in state court. (*Id.* at p. 482 [96 S.Ct. at p. 3046].) Despite its consistent refusal to extend the reasoning to any other type of constitutional violation (see *Withrow* v. *Williams* (1993) 507 U.S. 680 [113 S.Ct. 1745, 123 L.Ed.2d 407]; *Rose* v. *Mitchell* (1979) 443 U.S. 545 [99 S.Ct. 2993, 61 L.Ed.2d 739]; *Jackson* v. *Virginia* (1979) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560]), the court has never expressly disavowed the possibility, thereby encouraging litigation as respondents seek additional procedural bars. (See Friedman, *supra*, 83 Cal.L.Rev. at p. 515.)

Friedman concludes "that even by the standards the Court is setting for itself, reform seems to be a failure. There is no evidence that state courts think more highly of the federal courts for all the reform decisions. A few more writs may have been denied, which may or may not be what the Court wished. From a doctrinal standpoint, however, the course of habeas law is as damaging to state interests and to finality as the rhetoric—or some of it—is respectful." (Friedman, *supra*, 83 Cal.L.Rev. at p. 546; see, e.g., *O'Neal* v. *McAninch*, *supra*, 513 U.S. at p. 443 [115 S.Ct. at p. 998].)

He then posits, "One might reasonably wonder if this was the better course. Play a mind game for a moment. Assume that the Supreme Court slowed the flow of new rights-expanding decisions (as was inevitable) but habeas courts were left free to resolve claims on the merits, without the procedural tangle reform has mandated. Compare that to the state of affairs now. There is an awfully good argument that matters would be much better. Cases would be resolved on the merits. They would be filed, dealt with, and resolved. It is unlikely many more writs would be granted. . . . [¶] Whether

or not this alternative state of affairs would be preferable, it is time for the Supreme Court to ask itself whether the reform venture has been a success. The Court is so wrapped up in the effort that it may be difficult to obtain the clarity of judgment necessary. But habeas has become a perennial battleground, with the war showing no sign of ending. Perhaps it is time to admit defeat." (Friedman, *supra*, 83 Cal.L.Rev. at p. 546.) That, or continue its Sisyphean labors. (Lay, *supra*, 77 Minn.L.Rev. at p. 1015.)

## III

Although the specific issues and judicial perspective may differ, the import of the federal experience should be clear: Procedural bars do not promote finality, but rather compromise it in direct proportion to the litigation they generate. If a petitioner is not invoking an exception, the vagueness of the rule encourages definitional quibbles. Every effort to clarify simply creates additional rounds in the process for both state and federal courts. (See Friedman, *supra*, 83 Cal.L.Rev. at p. 539; see also cases cited at fn. 7, *post.*)

Recent experience confirms we have embarked on a war of attrition over our own procedural bars, timeliness in particular. We began with the impossibly amorphous standards governing the filing of habeas petitions in capital cases: "If a petition is filed after substantial delay, the petitioner must demonstrate good cause for the delay. A petitioner may establish good cause by showing particular circumstances sufficient to justify substantial delay." (Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, policy 3, std. 1-2.) In *Clark*, this court "did attempt to explain at great length its requirements under the Standards . . . ." (*Morales*, *supra*, 85 F.3d at p. 1391.)[3] The explanation, however, was equally nebulous as well as riddled with exceptions requiring fact-specific analysis. (See *Clark*, *supra*, 5 Cal.4th at pp. 795-798.)

Thus, for example, "[a] petitioner will be expected to demonstrate *due diligence* in pursuing potential claims." (*Clark*, *supra*, 5 Cal.4th at p. 775, italics added.) "[T]he court will continue to consider the merits of the claim if asserted *as promptly as reasonably possible.*" (*Ibid.*, italics added.) "*In limited circumstances*," the court may consider incompetence of prior habeas counsel in assessing timeliness. (*Id.* at p. 779, italics added.) "[D]elay in seeking habeas corpus relief *may be justified* when the petition is ultimately

---

[3]The Ninth Circuit "express[ed] no opinion on whether the attempt succeeded, so that timeliness under the Standards invoked post-*Clark* would constitute an adequate and independent state ground of decision . . . ." (*Morales*, *supra*, 85 F.3d at p. 1391; see *Calderon* v. *U.S. Dist. Ct. for E.D. of California* (9th Cir. 1996) 96 F.3d 1126, 1130.)

filed if the petitioner can demonstrate that (1) he had *good reason to believe* other meritorious claims existed, and (2) the existence of facts supporting those claims *could not with due diligence* have been confirmed at an earlier time." (*Id.* at p. 781, italics added, fn. omitted.) Delay also requires a showing that " ' "the facts upon which [the petitioner] relies were not known to him and could not *in the exercise of due diligence* have been discovered by him at any time *substantially earlier* than the time of his motion for the writ." ' [Citation.]" (*Id.* at p. 779, italics added.)

Such imprecise, circular, and tautological language does not define a "clear" rule this court can "consistently appl[y]" to create a "well-established" standard. (*Morales, supra,* 85 F.3d at p. 1393.) Nor does it even provide guidance. In *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 290], both parties have cited much of the same language in *Clark* they reasonably argue supports their respective positions in these circumstances. Today's decisions bring us no greater clarity. Henceforth, denial of a timely request for investigative funds "are . . . relevant" to the timeliness inquiry. (Maj. opn., *ante,* at pp. 828-829.) Notwithstanding the "circumstances" describing when a denial of funding will be considered, this holding does not "set out criteria for determining 'good cause' " or "provide reasons" for future findings. (*Morales, supra,* 85 F.3d at pp. 1390-1391.) By any measure, "relevant" is a qualitative and contextual indicator, not a definitive standard providing an objective basis for imposing or declining to impose a timeliness bar. On the contrary, it injects another discretionary element into an already fact-intensive, case-specific analysis and confirms this court has previously engaged in ad hoc decisionmaking—the antithesis of a " 'firmly established and regularly followed state practice.' "[4] (*Ford* v. *Georgia, supra,* 498 U.S. at pp. 423-424 [111 S.Ct. at p. 857].)

In any event, this process is doomed. The primary problem is that "good cause" and "without substantial delay" defy standardization. Unlike the standards of other procedural bars, they resolutely resist the binary mode of an "unambiguous rule."[5] (*Morales, supra,* 85 F.3d at p. 1390.) Even assuming they could "be captured by the naked words of verbal formulae" (*Brecht* v. *Abrahamson, supra,* 507 U.S. at p. 656 [113 S.Ct. at p. 1731] (dis. opn. of

---

[4]Given the recent changes in habeas corpus investigation expense reimbursement provisions, today's gloss on "good cause" may be of limited utility in achieving regularity and uniformity; the new provisions may well necessitate a different rule.

[5]Compare Evidence Code section 353 (failure to object waives claim of erroneous admission of evidence); *People* v. *Ramos* (1997) 15 Cal.4th 1133, 1163 [64 Cal.Rptr.2d 892, 938 P.2d 950] (trial court without jurisdiction to entertain renewed suppression motion except as statutorily provided); *People* v. *Gallego* (1990) 52 Cal.3d 115, 166 [276 Cal.Rptr. 679, 802 P.2d 169] (failure to make *Wheeler* (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) motion waives issue on appeal); *People* v. *Coleman* (1988) 46 Cal.3d

O'Connor, J.)), the potential for variation will become a self-defeating Catch-22, with each inherently contextual and fact-dependent explanation requiring further explication. The Ninth Circuit has already implied such piecemeal definition by induction will not suffice.[6] (*Morales, supra,* 85 F.3d at p. 1391.) Moreover, by its nature, "guidance" is not the equivalent of "standards that, at least over time, can become known and understood within reasonable operating limits." (*Id.* at p. 1392; see *Karis, supra,* 828 F.Supp. at pp. 1462-1463.) Nor is mere invocation of the bar likely to suffice in the absence of a definitive standard.

With respect to finality, empirical evidence documents the negative consequences of the struggle over procedural bars. Delays abound both here and in the federal courts, intensified by protracted but ultimately futile wrangling as to their legal impact.[7] With today's decisions, the court takes a further step into the quagmire and squanders judicial resources without advancing the state of the law or the quality of justice. We are no closer to the ever-receding dream of adequate state grounds and farther from the goals of finality and comity. With each new attempt to clarify our rules, the court builds into the decisional equation another layer of discretion virtually foreclosing any hope of achieving "standards having compulsory force . . . articulated and applied with regularity." (*Karis, supra,* 828 F.Supp. at p. 1467.) In my view, it is time to recognize our procedural bars do not preclude federal court merit review and probably never will. Given the many costs, we should abandon the effort for the present in favor of the one certainty for ensuring expeditious review of capital habeas petitions: full merit review without regard to procedural bars. (Cf. *Clark, supra,* 5 Cal.4th at pp. 802-803 (conc. and dis. opn. of Mosk, J.).)

749, 770 [251 Cal.Rptr. 83, 759 P.2d 1260] (failure to exercise all peremptory challenges waives claim trial court erroneously refused to excuse juror for cause).

In comparison to questions of timeliness, the bar of *In re Dixon, supra,* 41 Cal.2d at page 761, is a well-defined standard. The problem thus far has been in establishing the consistency of its application. (See *Fields* v. *Calderon, supra,* 125 F.3d at pp. 763-764.)

[6]On the other hand, it is clear the Ninth Circuit is fully capable of honoring a procedural default when it determines the bar is strictly and regularly followed. (See *Ortiz* v. *Stewart* (9th Cir. 1998) 149 F.3d 923, 930-932.)

[7]See, e.g., *Calderon* v. *U.S. Dist. Ct. for E.D. of Cal.* (9th Cir. 1996) 103 F.3d 72 (reference to timeliness bar caused 16-month delay including denial of certiorari petition); *Calderon* v. *U.S. Dist. Ct. for the E.D. of California, supra,* 96 F.3d 1126 (25-month delay); *Morales, supra,* 85 F.3d 1387 (more than 3-year delay); *Siripongs* v. *Calderon, supra,* 35 F.3d 1308 (43-month delay); *Deere* v. *Calderon, supra,* 890 F.Supp. 893 (14-month delay); *Karis, supra,* 828 F.Supp. 1449 (18-month delay); see also, e.g., *Coleman* v. *Calderon, supra,* 1996 WL 83882 (14-month delay, for which the court apologized to the parties in a footnote); compare *Fields* v. *Calderon, supra,* 125 F.3d 757 (38-month delay litigating *Harris* bars). Part of the delay results from the rule in *McCleskey* v. *Zant, supra,* 499 U.S. at pages 493-496 [111 S.Ct. at pages 1469-1471], which allows the petitioner to assert "cause and prejudice" to avoid dismissal on adequate and independent state procedural grounds.

Limiting our consideration solely to the merits would hasten resolution of these cases in at least two respects. Initially, it would reduce time consumption in this court. As our denial orders reflect, in the vast majority of capital habeas corpus cases we address all claims[8] on the merits even when procedural bars may apply. (See *Harris* v. *Reed* (1989) 489 U.S. 255, 264, fn. 10 [109 S.Ct. 1038, 1044, 103 L.Ed.2d 308].) Since the additional time necessary to discuss possible defaults and to formulate corresponding orders advances institutional goals marginally, if at all, it can usefully be eliminated from the process. Moreover, if our denial orders contained no reference to procedural bars, respondent would have no basis for seeking dismissal of claims in federal court on those grounds. Short-circuiting that gambit would also expedite finality. (See fn. 7, *ante.*)

Understandably, there is concern that the omission of procedural bars from our habeas corpus denial orders will invite multiple and "last minute" petitions. To some extent, that is inevitable in capital cases. Adopting a more expeditious procedure does not deny us the flexibility to address such problems as they arise. Even if merit review is the general rule, *Clark* provides clear notice that the court can and will invoke procedural bars without consideration of the merits when abuse of the writ is manifest.

We should at least adopt this approach until we can determine the impact of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No. 104-132 (Apr. 24, 1996) 110 Stat. 1214), which could substantially curtail and expedite federal habeas corpus review while at the same time enhancing finality and comity. Among other provisions, the act allows federal courts to disregard the failure to exhaust state remedies and deny claims on the merits (28 U.S.C. § 2254(b)(2)), limits the basis for granting relief on any claim adjudicated on the merits in state court (*id.*, subd. (d)(1)), and precludes claims of ineffective assistance of habeas corpus counsel (*id.*, subd. (i)). The act also imposes a one-year statute of limitations for filing a federal habeas corpus petition (28 U.S.C. § 2244(d)(1)) and places significant restrictions on the filing of successive petitions (*id.*, subd. (b)(1)). Our state Legislature and this court have also taken steps to qualify California for the special habeas corpus procedures in capital cases (28 U.S.C. § 2261 et seq.), which impose additional procedural limitations. (See Gov. Code, § 68650 et seq., added by Stats. 1997, ch. 869, § 3; Cal. Rules of Court, rule 76.6 [eff. Feb. 27, 1998, amended Apr. 21, 1998].)

Our own Legislature has considered amending state habeas corpus procedures as well. (See Sen. Bill No. 151 (1997-1998 Reg. Sess.).) While the

---

[8]The majority notes four cases in the last two terms in which the court denied a total of twenty-three claims solely on the basis of procedural default. During that same period, we have addressed many hundreds of claims, including multiple subparts, on both the merits and procedural grounds.

federal experience shows legislative intervention is no panacea, some changes could have a positive effect on finality and comity. At the same time, however, the Legislature should be cautious to avoid the pitfalls this court struggles with, such as vague measures of timeliness and "good cause." Whatever changes are implemented must articulate definitive standards such as a statute of limitations, limits on review of contentions that were or could have been raised on appeal, and restrictions on successive petitions. Any exceptions should be narrow and well defined. Only in such circumstances will procedural rules have the necessary foundation for adequate and independent state grounds and clear guidance for habeas corpus counsel.

Petitioner's application for a rehearing was denied September 23, 1998. Kennard, J., was of the opinion that the application should be granted.

Appendix

S042737

## IN THE SUPREME COURT OF CALIFORNIA

### IN RE GERALD A. GALLEGO ON HABEAS CORPUS

Petition for writ of habeas corpus denied.

Claims I, II, III, and IV are denied on the merits. To the extent Claim II asserts that the trial court erred in failing to order a competency hearing, it was raised and rejected on appeal, and hence also is barred under *In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001] (*Waltreus*). In addition, each claim is barred as untimely under *In re Robbins* [(1998) 18 Cal.4th 770] (*Robbins*), and *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*).

Claim V is denied on the merits. To the extent Claim V reasserts a claim that was raised and rejected on appeal, it is barred under *Waltreus, supra*. To the extent Claim V presents a claim based on the appellate record but not raised or addressed on appeal, it should have been raised on appeal and is barred under *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513] (*Dixon*). In addition, Claim V is barred as untimely under *Robbins, supra,* and *Clark, supra*.

Claim VI is denied on the merits. In addition, it is barred as untimely under *Robbins, supra,* and *Clark, supra*.

Claims VII, VIII, and IX are denied on the merits. To the extent these claims reassert claims raised and rejected on appeal, they are barred under *Waltreus, supra*. To the extent these claims are based on the appellate record but were not raised or addressed on appeal, they are barred under *Dixon, supra*. In addition, each claim is barred as untimely under *Robbins, supra,* and *Clark, supra*.

Claims X and XI are denied on the merits. In addition, each claim is barred as untimely under *Robbins, supra,* and *Clark, supra*.

Claims XII and XIII are denied on the merits. In addition, each claim is barred as untimely under *Robbins, supra,* and *Clark, supra*.

Claims XIV and XV are denied on the merits. Each is also barred under *Waltreus*, *supra*. In addition, each claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XVI is denied on the merits. Subparts A and D thereof are barred under *Waltreus*, *supra*. Subparts B and C thereof are barred as waived under *People* v. *Green* (1980) 27 Cal.3d 1, 27-34 [164 Cal.Rptr. 1, 609 P.2d 468], and under *Dixon*, *supra*. In addition, the claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claims XVII and XVIII are denied on the merits. Claim XVIII also is barred under *Waltreus*, *supra*. In addition, each claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XIX is denied on the merits. Subparts A(1)-(3) and B (1) are barred under *Dixon*, *supra*, and the remaining subparts of Claim XIX are barred under *Waltreus*, *supra*. In addition, the claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XX is denied on the merits. To the extent it reasserts a claim that was raised and rejected on appeal, it is barred under *Waltreus*, *supra*. To the extent it presents a claim based upon the appellate record but not raised or addressed on appeal, it is barred under *Dixon*, *supra*. In addition, the claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XXI is denied on the merits. It also is barred under *Waltreus*, *supra*. In addition, it is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XXII is denied on the merits. To the extent it reasserts a claim that was raised and rejected on appeal, it is barred under *Waltreus*, *supra*. To the extent it presents a claim based upon the record but not raised or addressed on appeal, it is barred under *Dixon*, *supra*. In addition, the claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claims XXIII and XXIV are denied on the merits. Each also is barred under *Waltreus*, *supra*. In addition, each claim is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XXV is denied on the merits. It also is barred under *Dixon*, *supra*. In addition, it is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XXVI is denied on the merits. It also is barred under *Waltreus*, *supra*. In addition, it is barred as untimely under *Robbins*, *supra*, and *Clark*, *supra*.

Claim XXVII is denied on the merits. It also is barred under *Dixon, supra*. In addition, it is barred as untimely under *Robbins, supra,* and *Clark, supra.*

Claims XXVIII, XXIX, XXX, and XXXI are denied on the merits. Each also is barred under *Waltreus*, *supra*. In addition, each claim is barred as untimely under *Robbins, supra,* and *Clark, supra.*

Claim XXXII is denied on the merits. In addition, it is barred as untimely under *Robbins, supra,* and *Clark, supra.*

Claim XXXIII is denied on the merits. It also is barred under *Dixon, supra*. In addition, it is barred as untimely under *Robbins, supra,* and *Clark, supra.*

Claim XXXIV is denied on the merits. In addition, it is barred as untimely under *Robbins, supra,* and *Clark, supra.*

Claim XXXV is denied on the merits. It also is barred under *Waltreus*, *supra*. In addition, it is barred as untimely under *Robbins, supra,* and *Clark, supra.*

Insofar as any claim asserts ineffective assistance of immediately preceding appellate and habeas corpus counsel, it is denied solely on the merits. (*Robbins, supra,* at p. 815, fn. 35.)

Mosk, J., and Brown, J., would deny the petition solely on the merits.