Stevie Lamar **FIELDS**, Petitioner–Appellant,

v.

Arthur **CALDERON**, Warden, Respondent–Appellee.

No. 96–99014.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 19, 1997.

Decided Sept. 10, 1997.

---

David S. Olson, Carlsmith, Ball, Wichman, Case, & Ichiki, Los Angeles, California, for petitioner-appellant.

Carol Frederick Jorstad, Deputy Attorney General, Los Angeles, California, for respondent-appellee.

Before: PREGERSON, WIGGINS, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Stevie Lamar Fields ("Fields") appeals the district court's order granting Warden Calderon's ("the State's") motion to dismiss eleven claims contained in Fields' second amended federal petition for writ of habeas corpus because they were declared procedurally defaulted by the California Supreme Court. We have jurisdiction under 28 U.S.C. § 1292(b). We vacate and remand.

## PROCEDURAL HISTORY

In 1979, Fields was convicted of murder and sentenced to death.[1] In 1983, his conviction and sentence were affirmed by the California Supreme Court on direct appeal. *People v. Fields*, 35 Cal.3d 329, 197 Cal.Rptr. 803, 673 P.2d 680 (1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 204 (1984).

In 1984, Fields filed a petition for writ of habeas corpus in the California Supreme Court. After a hearing on the issue of whether Fields' attorney provided ineffective assistance, the California Supreme Court denied the petition in 1990, holding that Fields suffered no prejudice from his attorney's alleged incompetence. *In re Fields*, 51 Cal.3d 1063, 275 Cal.Rptr. 384, 800 P.2d 862 (1990), *cert. denied*, 502 U.S. 845, 112 S.Ct. 140, 116 L.Ed.2d 107 (1991).

On May 25, 1993, Fields filed a federal petition for writ of habeas corpus in district court. On July 29, 1993, the California Supreme Court decided two cases that are critical to the resolution of this appeal: *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), and *In re Harris*, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993).

On August 2, 1993, Fields filed an amended federal habeas petition. The State moved to dismiss the petition on the grounds of procedural default. Finding unexhausted claims, the district court stayed federal proceedings on October 20, 1993, in order to allow Fields an opportunity to exhaust his state claims.

On January 14, 1994, Fields filed a second petition for writ of habeas corpus in the California Supreme Court. The State moved for denial of the state petition on procedural grounds. On October 14, 1994, the California Supreme Court denied Fields' second state habeas petition. In the portion relevant to this appeal, the California Supreme Court ruled:

> The following claims are denied on the procedural ground of untimeliness, in that they could have been, but were not, raised on appeal or in the first habeas corpus petition: the claims set forth in parts IX (A, B, E, F, G), X (B, C, F, G, H, I), XV, XVIII, XXI (as to the claim relating to the instruction on suppression of evidence), XXIII, XXIV, XXV, XXVI, XXX, XXXI. (*In re Harris* (1993) 5 Cal.4th 813, 829, 21 Cal.Rptr.2d 373, 855 P.2d 391; *In re Dixon* (1953) 41 Cal.2d 756, 759, 264 P.2d 513.)[2]

On March 20, 1995, the United States Supreme Court denied certiorari. *Fields v. California*, 514 U.S. 1022, 115 S.Ct. 1369, 131 L.Ed.2d 225 (1995).

On March 21, 1995, Fields filed a second amended habeas petition in the district court. On July 31, 1995, the State filed a motion to dismiss the claims denied by the California Supreme Court's order due to procedural default. After a hearing, the district court granted the motion on June 10, 1996, and dismissed all of the claims to which the State had asserted a procedural bar. On July 30, 1996, the district court denied Fields' motion for reconsideration and granted his motion for interlocutory appeal. On August 27, 1996, we granted Fields permission to take an interlocutory appeal of this dismissal order.

## DISCUSSION

■ "The district court's dismissal of the petition for writ of habeas corpus on the

---

1. The facts of the underlying crime can be found in *People v. Fields*, 35 Cal.3d 329, 197 Cal.Rptr. 803, 673 P.2d 680 (1983).

2. In Fields' federal petition, these claims are numbered VII (A, B, E, F, G), VIII (B, C, F, G, H, I), XIII, XVI, XIX, XXI, XXII, XXIII, XXIV, XXVIII, and XXIX respectively.

ground of state procedural default involves an issue of law that we review *de novo.*" *Morales v. Calderon,* 85 F.3d 1387, 1389 n. 6 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996). *See also Hunter v. Aispuro,* 982 F.2d 344, 346 (9th Cir.1992).

The issue for decision is whether the California Supreme Court's *Dixon* rule serves as an adequate and independent state ground for its denial of eleven claims in Fields' habeas petition. In *Dixon,* the California Supreme Court held:

> The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.

*Ex parte Dixon,* 41 Cal.2d 756, 264 P.2d 513, 514–15 (1953) (In Bank) (citations omitted). If the *Dixon* rule provides an adequate and independent state ground for the California Supreme Court's decision, Fields "has defaulted procedurally on the affected claims and cannot raise them in federal court unless he shows cause and prejudice or a fundamental miscarriage of justice." *Morales,* 85 F.3d at 1389 (citing *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991)). Because we conclude that the *Dixon* rule is not an adequate state ground to bar federal review of Fields' defaulted claims, we will not address Fields' alternative argument that the *Dixon* rule is not an independent state ground sufficient to bar federal review.[3]

### A. *The Trigger Date*

■ Before addressing the adequacy of the *Dixon* rule, we must first determine the proper date on which the rule's adequacy is to be measured. The district court ruled that "[t]he *Dixon* rule was firmly established both at the time petitioner filed his second habeas petition [January 14, 1994] and at the time of his direct appeal [1981]." The State

argues that the correct trigger date is October 14, 1994, the date on which the California Supreme Court denied Fields' second state habeas petition where the procedural bar at issue was actually applied. Fields argues that the correct trigger date is 1981, the time of his direct appeal, when the defaulted claims should have been raised. Our discussion of the 1981 date will demonstrate the flaw in the State's reasoning.

■ The Supreme Court of the United States has made it clear that a state's procedural rule used to bar consideration of a claim "must have been 'firmly established and regularly followed' by the time as of which it is to be applied." *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky,* 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984)). In *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958), the Court refused to apply a state's procedural rule, because the defendant there could not be "deemed to have been apprised of its existence." In *Ford,* the Supreme Court said that applying the rule to Ford would "apply a rule unannounced at the time of [Ford's] trial...." *Ford,* 498 U.S. at 424, 111 S.Ct. at 857.

We have held that the proper time for determining whether a procedural rule was firmly established and regularly followed is "the time of [the] purported procedural default." *Calderon v. Bean,* 96 F.3d 1126, 1130 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997). Therefore, we examine whether the state courts were regularly and consistently applying the relevant procedural default rule "at the time the claim should have been raised." *Calderon v. U.S. Dist. Ct. For E.D. of Cal.,* 103 F.3d 72, 75 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997).

With respect to the *Dixon* rule, we have held that a relevant point of reference for assessing its application is the time at which the petitioner "had an opportunity to raise

---

**3.** We further decline to address Fields' argument that the California Supreme Court's order on October 14, 1994, denying his second state habeas petition, is ambiguous. We assume, for purposes of this opinion, that the order is not ambiguous.

the claims on direct appeal." *Id. See also Bean*, 96 F.3d at 1131 (evaluating the *Dixon* rule "at the time Bean filed his direct appeal"). Because the *Dixon* rule precludes collateral review of a claim that could have been brought on direct appeal, the procedural default, though announced by the California Supreme Court when the habeas petition is denied, technically occurs at the moment the direct appeal did not include those claims that should have been included for review. In this case, that moment is 1981, the year of Fields' direct appeal.

In addition to avoiding the unfairness of applying a new rule retroactively, the requirement that the rule be in existence at the time of the claimed default, the 1981 appeal in this case, also gives the defendant and his counsel notice that the claims must be raised at that time. A trigger date of 1994, when the default rule was actually applied by the California Supreme Court, would not insure that Fields and his counsel knew in 1981 that all claims had to be raised then or be held to be procedurally barred. The requirement of notice thus dooms the State's attempt to use 1994 as the trigger date. A consistently applied rule in 1994 could not cure a lack of notice in 1981.

Fields does not attempt to demonstrate the inconsistent application of the *Dixon* rule in 1981 by employing the traditional method of providing "a representative sample of cases in which the default was either invoked or, at least, where it arguably might have been applicable but was disregarded." *Fierro v. Calderon*, No. CV–94–3198–LGB, at 15

4. In previous cases, we have avoided the resolution of this issue. *See Hayes*, 103 F.3d at 75 (noting that "[w]hether the *Dixon* rule was sufficiently clear and consistently applied before *Harris* is open to some question," but declining to decide the question, holding, in a petition for writ of mandamus, that the district court's conclusion that the *Dixon* rule was inadequate to bar review was not clearly erroneous); *Bean*, 96 F.3d at 1131 (noting that "[w]hether the *Dixon* rule was sufficiently clear and consistently applied at the time Bean filed his direct appeal [in 1981] is open to some question," but holding that "[w]e need not resolve the issue here ... since the California Supreme Court's order provides no basis upon which to apply the *Dixon* rule, if adequate, to Bean's claims.").

There is a conflict in the federal district courts in California as to whether the *Dixon* rule is

(C.D. Cal. June 12, 1996) (citing *Dugger v. Adams*, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); *Johnson v. Mississippi*, 486 U.S. 578, 587–89, 108 S.Ct. 1981, 1987–88, 100 L.Ed.2d 575 (1988); *Hathorn v. Lovorn*, 457 U.S. 255, 263–64 n. 14, 102 S.Ct. 2421, 2426–27 n. 14, 72 L.Ed.2d 824 (1982)). Instead, Fields argues that the California Supreme Court's reevaluation of its procedural rules in the 1993 cases of *In re Harris*, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993), and *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), decided between Fields' direct appeal and the California Supreme Court's denial of eleven claims in his habeas petition due to procedural default, establishes that the *Dixon* rule was not regularly and consistently applied at the time of his direct appeal. We therefore turn to the question, not previously decided in this circuit, whether the *Dixon* rule and the standards governing its application were firmly established and consistently followed at the time of Fields' direct appeal in 1981.[4]

### B. *The Adequacy of the Dixon Rule*

Under the adequate and independent state grounds doctrine, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991). "[T]he proce-

adequate to bar federal habeas review of defaulted claims. *See, e.g., Fierro v. Calderon*, No. CV–94–3198–LGB, at 16 (C.D. Cal. June 12, 1996) (ruling that "the California Supreme Court's recent reevaluation of its procedural rules [in *Harris* and *Clark*] all but establishes that the *Dixon* rule is not adequate"); *Deere v. Calderon*, 890 F.Supp. 893, 901 (C.D.Cal.1995) (noting that the *Dixon* rule had existed for forty years and ruling that "[p]etitioner has not offered the Court any compelling justification for disregarding the state court denial of the eight claims on the additional ground that they could have and should have been raised in petitioner's direct appeal"); *Odle v. Calderon*, 884 F.Supp. 1404, 1413 (N.D.Cal. 1995) (concluding that "the *Dixon* procedural rule has not been uniformly and regularly applied by the California Supreme Court").

dural default doctrine is a specific application of the general adequate and independent state grounds doctrine." *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir.1994). The procedural default doctrine "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729–30, 111 S.Ct. at 2553–54.

■ Not all state procedural bars are adequate to foreclose federal review. For the procedural default doctrine to apply, "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells*, 28 F.3d at 1010 (citing *Ford v. Georgia*, 498 U.S. 411, 424–25, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991)). *See also Morales*, 85 F.3d at 1390 ("Nor can a state preclude federal review by invoking procedural rules that the state does not apply consistently."). "The reason for these requirements ... is that it is grossly unfair-and serves none of the purposes of respect for procedural rules-to forfeit an individual's constitutional claim because he failed to follow a rule that was not firmly established at the time in question." *Bean*, 96 F.3d at 1129 (quotations and citations omitted).

■ The mere fact that a state's procedural rule includes an element of discretion does not render it inadequate. *Morales*, 85 F.3d at 1392. We have held:

> It is true ... that procedural rules need not be utterly mechanical. That the application of a rule requires the exercise of judicial discretion does not render the rule inadequate to support a state decision.... [J]udicial discretion is the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.

*Id.* So long as standards governing the exercise of discretion are firmly established and are consistently applied, a state's procedural rule will be adequate to bar federal claims.

In re Harris, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993), involved a habeas petitioner who was attempting to assert a claim in habeas that had previously been heard and decided on direct appeal. California's procedural rule that generally prevents a petitioner from raising a claim for habeas review that was previously heard and decided on direct appeal is known as the *Waltreus* rule, derived from *In re Waltreus*, 62 Cal.2d 218, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965).[5] Although *In re Harris* directly involved the application of the *Waltreus* rule, the California Supreme Court made clear that "[m]uch of the following discussion also applies to the so-called *'Dixon* rule,' which generally prohibits raising an issue in a postappeal habeas corpus petition when that issue was not, but could have been, raised on appeal." *In re Harris*, 21 Cal.Rptr.2d at 377 n. 3, 855 P.2d at 395 n. 3.

The *In re Harris* court began its discussion by noting that it has long been the rule in California that "habeas corpus will not lie ordinarily as a substitute for an appeal nor as a second appeal." *Id.* at 378, 855 P.2d at 396. However, because

> multiple repetitions [of the rule] over time may tend to obscure the original purpose of the rule[,] ... [and] large number[s] of petitions for writs of habeas corpus [are] filed in the courts of this state[,] the concomitant burden on the judiciary to evaluate the hundreds of petitions ultimately barred on procedural grounds [makes] it ... important to reexamine and reiterate the purpose of the *Waltreus* rule.

*Id.* (citations and footnote omitted).

After a discussion of the history and policies underlying the *Waltreus* rule, the court discussed the "corollary" *Dixon* rule:

> Proper appellate procedure thus demands that, *absent strong justification,* issues that could be raised on appeal must initially be so presented, and not on habeas corpus in the first instance. Accordingly, an *unjustified* failure to present an issue on appeal will *generally* preclude its consideration in a postconviction petition for a writ of habeas corpus.

*Id.*, 21 Cal.Rptr.2d at 380, 855 P.2d at 398 (citing *Dixon*, 41 Cal.2d 756, 264 P.2d 513)

---

5. We note that a claim barred from further state court review by the *Waltreus* rule would not be barred from review in federal habeas, as it would be an exhausted claim.

(emphasis added). The court then embarked on an extended discussion of the "number of exceptions to the *Waltreus* rule" (presumably likewise applicable to the *Dixon* rule) that "have developed over the years." *Id.* The court explained that "we treat the question in some depth in order to provide needed guidance to the bench and bar." *Id.*

The only reasonable interpretation of this last statement is that the exceptions to the *Dixon* and *Waltreus* rules that had "developed over the years" had been obscured by their "multiple repetitions" in so-called "postcard denials" by the California Supreme Court.[6] The court in *In re Harris* engaged in a lengthy discussion of four exceptions to the rules: (1) "fundamental constitutional error" (noting that "[h]ow to achieve the proper balance [between the state's interest in finality and the individual's right to a fair trial] has not ... always been clear" and discussing a range of cases dating back to 1953), (2) "lack of fundamental jurisdiction" (distinguishing a 1957 case that appeared to prevent the application of this exception), (3) "acting in excess of jurisdiction" (discussing various claims where this exception has been raised and applied), and (4) "change in the law" (concerning an intervening judicial decision). *See id.*, 21 Cal.Rptr.2d at 380–89, 855 P.2d at 398–407. This extensive discussion would not have been necessary if the California Supreme Court had regularly and consistently applied the *Dixon* and *Waltreus* rules in previous cases. Instead, it is evident that, over the years, a number of situations developed that compelled the court to create exceptions to these rules in the effort to better formulate the "proper balance" between finality and justice in habeas review. Because the California Supreme Court explicitly acknowledged that its application of the *Waltreus* and *Dixon* rules had become obscured over the years by the development of a number of exceptions, requiring the court to provide "needed guidance to the bench and bar" regarding the application of these rules, we conclude that the *Dixon* rule is not an adequate state ground to bar federal habeas review of Fields' defaulted claims.

Our conclusion is strengthened by the California Supreme Court's opinion in *In re*

*Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993), decided the same day as *In re Harris*. *In re Clark* involved the application of the procedural rules regarding the timeliness of habeas petitions and the doctrine of separate petitions, barring a petitioner from raising claims in a second habeas petition that could have been, but were not, raised in the first habeas petition. The court began its analysis with a general discussion of the historical development and application of the state's habeas procedural rules and the relevant exceptions. Though the court in *In re Clark* specifically declined to "clarify and limit the exceptions to the rules of *In re Waltreus* ... and *In re Dixon*" because that question was to be decided in *In re Harris*, the court clearly intended its general discussion of California's habeas procedural rules to encompass the *Dixon* and *Waltreus* rules. *Id.*, 21 Cal.Rptr.2d at 517–20, 521 n. 8, 855 P.2d at 737–40, 741 n. 8.

At the outset of its general analysis, the court explained:

> Before considering the possible merit of any claim, it is therefore appropriate to review the decisional and statutory law governing collateral attacks on judgments of conviction by petition for writ of habeas corpus. *In addition, because no clear guidelines have emerged in our past cases, we consider when departure from those rules is warranted.*

*Id.* at 517, 855 P.2d at 737 (emphasis added). Later in the discussion, the court held:

> Our past decisions have thereby suggested that the rules against piecemeal presentation of claims and repetitious petitions are *subject to undefined exceptions* and that the court may be willing to entertain multiple collateral attacks on a judgment notwithstanding the potential for abusive writ practice.

*Id.* at 520, 855 P.2d at 740 (emphasis added). The California Supreme Court could hardly have stated more clearly that the application of its procedural rules governing habeas petitions had become irregular and inconsistent. The opinions in *In re Clark* and *In re Harris* were intended to reestablish California's procedural rules governing state habeas peti-

---

6. In a postcard denial, the court denies a habeas petition by stating, without discussion, that cer-

tain claims are procedurally barred, citing the relevant case (*Dixon, Waltreus,* or some other).

tions and clearly define and limit the applicable exceptions.

These decisions from the California Supreme Court in 1993, though certainly instructive on the question of the adequacy of the *Dixon* rule, do not answer the question of exactly *when* the *Dixon* rule and other rules had become irregular and inconsistently applied. As we noted earlier, Fields did not provide us with a survey of cases to demonstrate the inconsistent application of the *Dixon* rule in *1981*, the time of his direct appeal.

However, we have conducted our own survey of California cases decided in the nine years preceding and including Fields' appeal (1973–1981). *See Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (wherein the Supreme Court undertook its own survey of state court cases to determine the adequacy of a procedural bar). We note in passing that during those years, habeas petitions were initially filed in California Superior Court with rights of appeal to both the California Court of Appeal and the California Supreme Court. Therefore, published decisions from both of California's appellate courts are instructive as to how the *Dixon* rule was being applied. After we eliminated the cases that cited the *Dixon* rule, but did not actually involve the possibility of the rule's application, we were left with nine cases.[7]

The *Dixon* case itself involved a claimed denial of constitutional rights (an unlawful search and seizure and a coerced confession), and the rule that emerged from *Dixon* originally applied to such claims. "The same principles should apply even though the alleged errors involving factual issues relate to an asserted denial of constitutional rights." *Dixon,* 264 P.2d at 515.

As the nine cases from 1973 to 1981 demonstrate, however, consideration of constitutional claims not raised on direct appeal had become the norm, even in cases where the *Dixon* rule was clearly applicable. In only two cases (*Jones* and *In re Ronald E.*), was

the *Dixon* rule specifically applied to bar review of an issue. In one other case (*In re Brown*), the court stated the *Dixon* rule, and then construed the habeas petition as one for mandamus. In the other cases, the rule was not applied to block consideration of the defaulted issue. *See, e.g., In re Walker,* 112 Cal.Rptr. 177, 518 P.2d at 1134 (assuming special circumstances exist in order to avoid the *Dixon* rule and reach the merits of the petition).

The *Fuller* case perhaps best represents the lack of guidance the *Dixon* rule was providing by 1981. The Court of Appeal said:

We shall determine the case on the merits. It is true that as a general rule habeas corpus cannot serve as a substitute for appeal. (*In re Dixon* (1953) 41 Cal.2d 756, 759, 264 P.2d 513.) The rule yields however, in special circumstances; courts do not always require the exhaustion of appellate remedies. (Ibid.; *In re Black* (1967) 66 Cal.2d 881, 887, 59 Cal.Rptr. 429, 428 P.2d 293; see Witkin, Cal.Criminal Procedure (1963) *Habeas Corpus and Other Extraordinary Writs,* § 797, p. 769.) Here, as in *In re Black, supra,* petitioner's continued confinement followed "somewhat unique" developments and the issue he presents is jurisdictional. It is also apparently novel. We are thus *disposed* to consider it.

*In re Fuller,* 124 Cal.App.3d 251, 177 Cal. Rptr. 233, 235–36 (1981) (emphasis added).

The flexible application of the *Dixon* rule was also clearly illustrated in *Duran:*

The Attorney General points out Duran has a remedy through his appeal from the order revoking probation, and moves to dismiss the petition on that basis. While ordinarily habeas corpus is not a substitute for appeal (*In re Dixon,* 41 Cal.2d 756, 264 P.2d 513), this Court has discretion to issue the writ if it believes an appeal is not adequate, or if a prompt disposition is required in the interests of justice. (*In re Baird,* 150 Cal.App.2d 561, 563, 310 P.2d

7. *In re Walker,* 10 Cal.3d 764, 112 Cal.Rptr. 177, 518 P.2d 1129 (1974) (In Bank); *In re Brown,* 9 Cal.3d 679, 108 Cal.Rptr. 801, 511 P.2d 1153 (1973) (In Bank); *People v. Jones,* 9 Cal.3d 546, 108 Cal.Rptr. 345, 510 P.2d 705 (1973) (In Bank); *People v. Vaughn,* 9 Cal.3d 321, 107 Cal. Rptr. 318, 508 P.2d 318 (1973) (In Bank); *In re*

*Fuller,* 124 Cal.App.3d 251, 177 Cal.Rptr. 233 (1981); *In re Watson,* 91 Cal.App.3d 455, 154 Cal.Rptr. 151 (1979); *In re Ronald E.,* 60 Cal. App.3d 749, 132 Cal.Rptr. 1 (1976); *In re Duran,* 38 Cal.App.3d 632, 113 Cal.Rptr. 442 (1974); *In re Young,* 32 Cal.App.3d 68, 107 Cal.Rptr. 915 (1973).

454; Witkin, Calif.Crim.Proc., p. 770). This is such a case.

*In re Duran*, 38 Cal.App.3d 632, 113 Cal. Rptr. 442, 444 (1974).

The California Supreme Court's 1993 decisions in *In re Harris* and *In re Clark*, combined with our independent survey of California case law for most of the decade preceding Fields' direct appeal in 1981, convince us that the *Dixon* rule is not an adequate state ground to bar federal review of Fields' defaulted claims.

## CONCLUSION

For the foregoing reasons, the district court's order dismissing claims VII (A, B, E, F, G), VIII (B, C, F, G, H, I), XIII, XVI, XIX, XXI, XXII, XXIII, XXIV, XXVIII, and XXIX contained in Fields' petition for writ of habeas corpus is VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED.