William Michael DENNIS, Petitioner,

v.

Jill L. BROWN, Warden of San
Quentin State Prison,
Respondent.

No. C 98 21027 JF.

United States District Court,
N.D. California.
San Jose Division.

March 10, 2005.

Peter Giannini, Los Angeles, CA, for Petitioner.

Ronald Matthias, San Francisco, CA, for Respondent.

ORDER GRANTING PETITIONER'S MOTION FOR RECONSIDERATION REGARDING ADEQUACY OF STATE PROCEDURAL BARS

FOGEL, District Judge.

On March 31, 2004, this Court granted Respondent's motion to dismiss as procedurally defaulted several claims contained in Petitioner's second amended petition for a writ of habeas corpus. At the same time, the Court granted Petitioner leave to file a motion for reconsideration to determine whether certain procedural bars applied by the California Supreme Court should be found adequate to support the state superior court's judgment against Petitioner under the burden-shifting test for analyzing adequacy announced in *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir.2003). Because this Court finds that Respondent has not met her burden under that test of establishing the adequacy of

the procedural bars, it necessarily concludes that Respondent has not shown that the affirmative defense of procedural default may be applied to the claims at issue. Accordingly, Petitioner's motion for reconsideration will be granted.

## I. BACKGROUND

The factual and procedural history of this case is set forth in *Dennis v. Woodford*, 65 F.Supp.2d 1093 (N.D.Cal.1999), and *People v. Dennis*, 17 Cal.4th 468, 71 Cal.Rptr.2d 680, 950 P.2d 1035 (1998). That history therefore is discussed herein only to the extent that it is pertinent to the present motion.

Having been sentenced to death, Petitioner filed his automatic direct appeal to the California Supreme Court on June 19, 1995; he filed his reply brief on direct appeal on May 10, 1996. On August 8, 1996, Petitioner filed his first state petition for a writ of habeas corpus with that court. The court rejected his appeal on February 19, 1998, and denied his first state habeas petition on November 4, 1998.

Petitioner's initial federal petition was filed on May 2, 2001. Because that petition contained both exhausted and unexhausted claims, this Court dismissed it as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Petitioner then filed a first amended petition that contained only exhausted claims on August 3, 2001.

Petitioner also filed a second state habeas petition as an exhaustion petition with the California Supreme Court on August 2, 2001. That court denied the exhaustion petition on November 26, 2002.[1] In its order denying the exhaustion petition, the court denied each claim or subclaim "on the merits" and, "separately and independently," deemed many of the claims and

---

1. The order denying the exhaustion petition that was originally filed was corrected nunc pro tunc on November 27, 2002.

subclaims to be procedurally barred as untimely,[2] successive,[3] pretermitted,[4] or repetitive.[5]

Having exhausted the claims that were deleted from his initial federal petition, Petitioner was granted leave on May 21, 2003, to file a second amended petition that was identical to the initial petition. Respondent then moved for—and obtained—dismissal of those claims that the California Supreme Court had deemed untimely, successive, or pretermitted, arguing that they were procedurally defaulted. *Bennett* was decided after a substantial portion of the briefing of Respondent's motion to dismiss had been completed. Thus, in its order dismissing the claims, the Court sua sponte granted Petitioner leave to file a motion for reconsideration as to whether in light of *Bennett* the relevant state procedural rules are adequate to support the state's judgment against Petitioner. That motion, which Respondent opposes, is now before the Court.

## II.  DISCUSSION

As a matter of comity and federalism, a state prisoner must fairly present habeas claims that raise federal questions to the highest state court so as to provide the state with an opportunity to rule on the merits of the claims before the prisoner seeks federal habeas relief. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). However, "[w]hatever springes [sic] the State may set for those who are endeavoring to assert rights that the State confers, the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis v. Wechsler*, 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143 (1923) (Holmes, J.).[6]  In light of these

2.  Pursuant to the California Supreme Court's then-applicable Standards Governing Filing of Habeas Corpus Petitions and Compensation of Counsel in Relation to Such Petitions in the Supreme Court Policies Regarding Cases Arising from Judgments of Death, claims filed within ninety days of the final due date of Petitioner's reply brief on direct appeal—that is, by August 8, 1996—would have been presumed timely.  Claims filed after that date were subject to being deemed untimely if the California Supreme Court determined that Petitioner was unable to establish an "absence of substantial delay," "good cause for the delay," or that the claim fell within one of four exceptions to the bar of untimeliness. *In re Robbins*, 18 Cal.4th 770, 77 Cal. Rptr.2d 153, 959 P.2d 311, 317 (1998).  Each time the court barred one of Petitioner's claims as untimely, the court cited *Robbins*, 77 Cal.Rptr.2d 153, 959 P.2d at 317–18, and *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 737–62 (1993).

3.  Claims were subject to being deemed successive if the California Supreme Court determined that Petitioner should have raised them in his first state habeas petition on August 8, 1996, unless Petitioner "adequately explain[ed] his ... failure to present *all* claims in the earlier filed petition." *Robbins*, 77

Cal.Rptr.2d 153, 959 P.2d at 322–23 n. 9 (internal quotation marks and citations omitted; emphasis in original).  Each time the court barred one of Petitioner's claims as successive, the court cited *Robbins*, 959 P.2d at 316 n.1, 322–23 n.9, *Clark*, 21 Cal.Rptr.2d 509, 855 P.2d at 740, and *In re Horowitz*, 33 Cal.2d 534, 546–47, 203 P.2d 513 (1949).

4.  Claims were subject to being deemed pretermitted if the California Supreme Court determined that Petitioner could have raised them on direct appeal but did not do so by the time he filed his reply brief on May 10, 1996, and there was an "absence of excuse for failure to employ that remedy." *Ex parte Dixon*, 41 Cal.2d 756, 264 P.2d 513, 514 (1953).  Each time the court barred one of Petitioner's claims as pretermitted, the court cited *Dixon, id.*

5.  The bar of repetitive claims is not at issue in the present action.

6.  Justice Holmes famously has written that "habeas corpus cuts through all forms and goes to the very tissue of the structure." *Frank v. Mangum*, 237 U.S. 309, 346, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (Holmes, J., dissenting).

competing considerations, a federal court generally "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *id.* at 750, 111 S.Ct. 2546.

### A. Independence

■ "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *La Crosse v. Kernan,* 244 F.3d 702, 704 (9th Cir.2001). "A state law ground is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" *Park v. California,* 202 F.3d 1146, 1152 (9th Cir.2000) (quoting *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (brackets in original)). To determine whether a state-court decision is independent of federal law, a federal court must examine the decision itself in which the state court invoked the procedural bar, as distinguished from other state-court decisions issued at or prior to the time that the purported procedural defaults occurred. *See, e.g., Park,* 202 F.3d at 1151–53; *Bennett,* 322 F.3d at 582–83; *La Crosse,* 244 F.3d at 707.

■ The California Supreme Court's order denying Petitioner's exhaustion petition, which was issued in 2002, is a so-called "postcard denial" that does not indicate on its face whether or not the court considered federal law when it invoked procedural bars. However, in 1998 the Cal-

ifornia Supreme Court declared that it would no longer consider federal law when denying a habeas claim as procedurally barred for untimeliness, with one exception not at issue here. *In re Robbins,* 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, 338–41 (1998).

In *Bennett,* the Ninth Circuit stated that

> we respect the California Supreme Court's sovereign right to interpret its state constitution independent of the federal law. Applying *Robbins* prospectively, we [conclude] that the California Supreme Court's post-*Robbins* denial of [a] state petition for lack of diligence (untimeliness) was not interwoven with federal law and therefore is an independent procedural ground.

322 F.3d at 582–83.

As this Court noted in its prior order regarding procedural default, even though the holding in *Bennett* involved only the untimeliness bar, *Bennett's* analysis, as explained in dicta, compels the same result for claims barred as successive or pretermitted because the pre-*Robbins* consideration of federal law in connection with all three of these bars was equivalent: *i.e.,* it involved the same "constitutional error" exception to the application of all three bars. 322 F.3d at 581–82; *see Park,* 202 F.3d at 1151–53 (discussing application of *Robbins* to claims barred as pretermitted); *La Crosse,* 244 F.3d at 707 (noting that consideration of federal law in barring claims as pretermitted is "analogous" to consideration of federal law in barring claims as untimely); *Fields v. Calderon,* 125 F.3d 757, 763 (9th Cir.1997) (discussing consideration of federal law in barring claims as pretermitted); *In re Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993) (discussing, inter alia, consideration of federal law in barring claims as untimely, successive, and pretermitted).

This Court therefore followed *Bennett* in applying *Robbins* prospectively and concluded that the California Supreme Court's determination of whether claims are procedurally barred as successive or pretermitted, like its determination of whether claims are procedurally barred as untimely, became independent of federal law post-*Robbins;* thus, that court's post-*Robbins* decision denying Petitioner's exhaustion petition "rests on ... state law ground[s] that [are] independent of the federal question," *Coleman,* 501 U.S. at 729, 111 S.Ct. 2546. *Accord Protsman v. Pliler,* 318 F.Supp.2d 1004, 1007–08 (S.D.Cal.2004).

## B. Adequacy

■ A state procedural bar is inadequate to support a state-court judgment if it is not "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells v. Maass,* 28 F.3d 1005, 1010 (9th Cir.1994); *see also Lee v. Kemna,* 534 U.S. 362, 389, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).[7] A federal court "should not insist upon a petitioner, as a procedural prerequisite to obtaining federal relief, complying with a rule the state itself does not consistently enforce." *Siripongs v. Calderon,* 35 F.3d 1308, 1318 (9th Cir.1994). Nor should a federal court enforce a bar grounded in a rule that is

7. Randy Hertz and James S. Liebman note in *Federal Habeas Corpus Practice and Procedure* § 26.2d (4th ed. 2001 & Supp.2003), their authoritative treatise on federal habeas law, that a state procedural rule may be found inadequate if: (1) the rule violates due process, *see, e.g., Dobbs v. Zant,* 506 U.S. 357, 359, 113 S.Ct. 835, 122 L.Ed.2d 103 (1993); (2) the rule results in a finding that a petitioner waived a federal right even though federal law precludes such a finding, *see, e.g., Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); (3) the rule requires a prisoner, in order to assert one federal right, to forgo another one, *see Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); (4) the rule frustrates federal rights, *see, e.g., Michel v. Louisiana,* 350 U.S. 91, 93, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *Hoffman v. Arave,* 236 F.3d 523, 530–36 (9th Cir.2001); (5) the rule is "insufficiently hospitable" to federal claims, *Alburquerque v. Bara,* 628 F.2d 767, 776 (2d Cir.1980) (Brieant, J., concurring); *see, e.g., Osborne v. Ohio,* 495 U.S. 103, 123–25, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); (6) the rule does not allow "a reasonable opportunity to have the issue as to the claimed [federal] right heard and determined by the state court," *Parker v. Illinois,* 333 U.S. 571, 574, 68 S.Ct. 708, 92 L.Ed. 886 (1948); (7) the rule requires objection to an error before the error becomes reasonably apparent, *see, e.g., Martinez–Villareal v. Stewart,* 118 F.3d 628, 629, 634 n. 7 (9th Cir.1997), *aff'd on other grounds,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); (8) the rule is established, invoked, or applied with a high degree of severity for the first time in a petitioner's case, in a way that the petitioner could not have anticipated, *see, e.g., Lee,* 534 U.S. at 381–82, 122 S.Ct. 877; (9) the rule is not "strictly or regularly followed" by a state's courts, *Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964); *accord, e.g., Coleman,* 501 U.S. at 758, 111 S.Ct. 2546 (White, J., concurring) (if state supreme court "on occasion waives the untimeliness rule[,] the rule would not be an adequate and independent state ground barring direct or habeas review"); (10) the rule is "pointless," or "an arid ritual of meaningless form," and does not serve a "legitimate state interest," *Henry v. Mississippi,* 379 U.S. 443, 447–48, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); (11) the means utilized to raise a particular claim, even if they do not comply with the rule, "substantially me[e]t" the rule's "essential requirements," *Lee,* 534 U.S. at 385, 122 S.Ct. 877, 151 L.Ed.2d 820 (12) the rule produces a result that is manifestly unjust or shocks the conscience, *see, e.g., Judd v. Haley,* 250 F.3d 1308, 1318 (11th Cir.2001); or (13) the rule is unreasonable because it penalizes a petitioner by withdrawing remedies available in a particular judicial forum as a result of misconduct occurring in another judicial forum that had no effect on the forum in which remedies are withheld, *see, e.g., Braun v. Powell,* 77 F.Supp.2d 973, 982 n. 5 (E.D.Wis.1999), *rev'd on other grounds,* 277 F.3d 908, 915–16 (7th Cir.2002); *see also Ortega–Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

unclear or uncertain. *See Morales v. Calderon*, 85 F.3d 1387, 1390–93 (9th Cir. 1996). The question of whether a state procedural bar is clear, consistently applied, and well-established is determined as of the time the purported default occurred and not when a state court actually applies the bar to a claim. *Fields*, 125 F.3d at 760–61.

In *Bennett*, the Ninth Circuit adopted a new burden-shifting test for determining whether a state procedural bar is adequate. The Ninth Circuit held that

> the ultimate burden of proving the adequacy of the California state bar is upon the State of California. . . . Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's. [¶] Accordingly, because it is the State who seeks dismissal based on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is applicable. . . .

322 F.3d at 585–86. Because "state courts must follow a 'firmly established and regularly followed state *practice*' in order for an asserted procedural bar to be adequate," a federal court must examine proffered unpublished as well as published decisions of the relevant state courts to determine whether those courts had, "in actual practice, a clear, consistently applied, and well-established rule at the time of [a habeas petitioner's] purported default." *Powell v. Lambert*, 357 F.3d 871, 872 (9th Cir.2004) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850,

112 L.Ed.2d 935 (1991) (emphasis in original)) (other internal quotation marks omitted); 357 F.3d at 879. This examination "should be limited to the language of the state court opinions" rather than "based on a post hoc examination of the pleadings and record" in the cases reviewed. *Bennett*, 322 F.3d at 584. In addition, because the California Supreme Court's untimeliness rules for capital and noncapital cases differ, review of that rule in the present action must be limited to capital cases. *Id.* at 583.

### 1. *Bennett*'s First Burden

Under *Bennett*, the initial burden to be met in determining the adequacy of a state procedural bar is Respondent's: the state must "adequately ple[a]d the existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at 586. This is an exceedingly modest burden: to plead procedural default adequately, one need only "assert or allege [it] in a legal proceeding." Black's Law Dictionary 483 (pocket ed.1996); *cf.* Fed. R.Civ.P. 8(a), (b), (e) (pleadings generally require "short and plain" allegations; "[e]ach averment of a pleading shall be simple, concise, and direct").

■ In her answer to the second amended petition, Respondent has identified each of Petitioner's claims that she alleges was procedurally defaulted; she also asserted that the claims at issue were procedurally defaulted when she filed her motion to dismiss procedurally defaulted claims. By "assert[ing] or alleg[ing]" procedural default in these ways, Respondent plainly has "adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense."

### 2. *Bennett*'s Second Burden

Under *Bennett*, "the burden to place that defense in issue [now] shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allega-

tions that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." 322 F.3d at 586. This burden also is quite modest: at most,[8] Petitioner need only *assert allegations;* he does not need to *prove* anything. *See id.* at 585–86. Note that in the legal context "plead," "assert," and "allege" are synonyms according to Black's Law Dictionary. Thus, Petitioner may satisfy his burden if he pleads inadequacy with particularity. *Cf.* Fed.R.Civ.P. 9(a), (b), (c), (g) (providing for assertion of specific factual allegations when pleading certain special matters in complaints and answers: *e.g.,* "specific negative averment, which shall include such supporting particulars . . .").

■ The bars of habeas claims as untimely, successive, and pretermitted "were not firmly established and consistently applied at least prior to 1993." *Cooper v. Calderon,* 255 F.3d 1104, 1111 (9th Cir. 2001); *Fields,* 125 F.3d at 765. The California Supreme Court recognized as much when it elucidated its procedural rules in *Clark* on July 29, 1993. 21 Cal.Rptr.2d 509, 855 P.2d at 737 ("no clear guidelines have emerged in our past cases"); *id.* at 740 ("procedural bars to habeas corpus

relief have been termed 'discretionary' " by Cal. Sup.Ct.); *see also In re Harris,* 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993) (discussing pretermitted and repetitive claims). As already indicated, Petitioner's purported procedural defaults occurred at some point between August 8, 1996, and August 3, 2001, for claims found untimely;[9] on August 8, 1996, for claims found successive; and on May 10, 1996, for claims found pretermitted. Thus, Petitioner may meet his burden in this case by putting at issue whether the California Supreme Court became consistent in barring claims as untimely, successive, and pretermitted between July 29, 1993, and the respective dates of his purported defaults. This is, in fact, the "traditional method," pre-dating *Bennett,* by which a habeas petitioner "demonstrate[s] the inconsistent application" of a state procedural rule. *Fields,* 125 F.3d at 761.

Petitioner has directed the Court's attention to approximately 200 capital habeas cases decided by the California Supreme Court in which purported procedural defaults occurred or arguably could have occurred as far back as 1980 and potentially as recently as 2003. Virtually all were resolved by postcard denials.[10] Petitioner alleges

---

**8.** The fact that Petitioner "*may*" satisfy [his] burden by asserting specific factual allegations"—not that he *must* do so—suggests that there may be other ways that Petitioner could meet his burden. *Cf. Hooks v. Ward,* 184 F.3d 1206, 1217 (10th Cir.1999) (meeting petitioner's burden "*must* be done, at a minimum, by specific allegations as to the adequacy of the state procedure" (emphasis added)); *contra Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir.1997) ("petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar"). While the Ninth Circuit in *Bennett* largely adopted the Tenth Circuit's reasoning in *Hooks,* it did not do so completely. 322 F.3d at 584–86. The Ninth Circuit apparently intended that a petitioner's burden would be lighter than it is in

the Tenth Circuit: had the court intended to make the "assertion of specific factual allegations" a requirement, it simply could have adopted the Tenth Circuit's reasoning in its entirety.

**9.** The actual date on which a particular claim was defaulted as untimely is one day after the last day that Petitioner would have been able to sustain his burden of establishing the claim's timeliness in the California Supreme Court. It is beyond this Court's purview to determine those dates for the claims in the exhaustion petition that the California Supreme Court deemed untimely.

**10.** Petitioner presents almost all of these cases in tables that include data not found in

that the California Supreme Court was inconsistent in barring claims in these petitions as untimely, successive, and pretermitted, as demonstrated by the fact that one or more procedural bars was applied to some claims and not to others. By asserting inadequacy with specific factual allegations, Petitioner has placed Respondent's defense of procedural default at issue. *See Bennett,* 322 F.3d at 586; *Powell,* 357 F.3d at 876 (habeas petitioner "directed our attention to several cases [which] are sufficient to shift the burden back to the state to show that its procedural rule was clear, consistently applied, and well-established ..." (internal quotation marks omitted)).

In response to Petitioner's assertions, Respondent contends that Petitioner has not shown that the California Supreme Court in fact applies its procedural bars inconsistently to habeas claims. She relies principally upon an unpublished decision from this district, *Dossman v. Newland,* No. C 00 384 SI (PR), 2004 WL 302335 (N.D.Cal. Feb. 12, 2004), to argue that Petitioner has not met his burden. In *Dossman,* most of the claims in the habeas petition had been deemed by the California Supreme Court to be untimely. *Id.* at *2. The district court found the untimeliness bar to be adequate to support the judgment against the petitioner, *id.* at *5–7, and went on to find the claims procedurally defaulted, *id.* at *8.

As an initial matter, the Court notes that *Dossman* is a noncapital case and, as such, is of limited relevance to the present inquiry. This is so because "California's rules governing timeliness in capital cases

differ from those governing noncapital cases." *Bennett,* 322 F.3d at 583. Moreover, it appears that the court may have overstated a petitioner's burden under *Bennett's* burden-shifting test. In attempting to meet his "burden to place [the respondent's] defense in issue," 322 F.3d at 586, the petitioner in *Dossman* cited at least five postcard denials, some of which applied the untimeliness bar, alleging that the bar was applied inconsistently in these cases. The court found that these "cases do not aid [the petitioner] because one of the *Bennett* guideposts specifically directs the district court to look at the language of the state court decisions rather than to go behind the summary orders...." 2004 WL 302335, at *6. The court observed that postcard denials "do not prove or disprove that the California Supreme Court consistently applied the timeliness rule after *Clark.*" It then concluded that "Dossman's assertions are not *proof,*" that Dossman had failed to present *"evidence"* to enable the court to "figure out how the rule was applied in practice," and that the information Dossman had provided "does not *establish* inconsistent application." *Id.* at *7 (emphasis added).

However, a petitioner need not "go behind" postcard denials to sustain his *Bennett* burden where the language of the postcard denials demonstrates that a procedural bar was used in some cases and not in others and the petitioner "asserts specific factual allegations" that the procedural bar was applied inconsistently in those cases. Rather, *Bennett* requires a petitioner only "to place that defense in issue...." The petitioner need not provide any *evidence* or *prove* or *establish* anything; instead, "because it is the State who

the decisions issued by the California Supreme Court. Petitioner then analyzes these data to demonstrate inconsistency. The Court has reviewed the state-court decisions themselves, whether published or unpublished, including the postcard denials. The

Court has considered neither the extraneous data concerning these cases presented by Petitioner nor the arguments of either party analyzing the data. *See Bennett,* 322 F.3d at 584; *Powell,* 357 F.3d at 871.

seeks dismissal based on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is applicable." 322 F.3d at 586.

Respondent also relies upon *Stanley v. Woodford,* No. CIV S–95–1500 FCD GGH P (E.D.Cal. Mar. 3, 2004) (findings and recommendations regarding procedural default), a magistrate judge's unpublished report in a capital habeas case.[11] The *Stanley* report, in finding the untimeliness bar adequate, refused to consider unexplicated decisions in determining whether the California Supreme Court applied the bar consistently. The report concluded, without further explanation, that excluding such decisions "commences [sic] the only feasible methodology." At the same time, the writer observed that "if this is the sum total of the way respondent meets its adequacy-of-the-bar burden, the undersigned is puzzled why *Bennett* remanded the matter back to district court for an assessment of the four, published timeliness decisions." *Id.* at 14. Yet postcard denials obviously are unpublished decisions—albeit short ones with little or no analysis—and it is established that a federal court must review unpublished state-court decisions to determine state-court practice. "Indeed, to the extent that decisions of the state courts are unpublished because they involve only routine application of state court rules, unpublished decisions are a particularly useful means of determining actual practice." *Powell,* 357 F.3d at 879; *see id.* at 872 ("We understand the [United States Supreme] Court's use of the word 'practice' to refer to the state courts' actual

practice, not merely to the practice found in their published opinions."); *Morales,* 85 F.3d at 1391 (including postcard denials in review of cases to determine procedural bar's adequacy).[12]

This Court concludes that Petitioner has alleged adequately that the California Supreme Court was inconsistent in barring claims in approximately 200 specific capital habeas cases as untimely, successive, and pretermitted, as demonstrated by the fact that one or more procedural bars was applied to some claims and not to others. By doing so, Petitioner has placed Respondent's defense of procedural default at issue and thus has met his burden under *Bennett.* See 322 F.3d at 586; *Powell,* 357 F.3d at 876.

### 3. *Bennett*'s Third Burden

"[T]he ultimate burden of proving the adequacy of the California state bar is upon the State of California." *Bennett,* 322 F.3d at 585. Since Respondent has "adequately pled" the defense of procedural default and Petitioner has "place[d] that defense in issue," Respondent "must bear the burden of demonstrating that the bar is applicable—in this case that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.* at 586.

■ As discussed earlier, the procedural bars at issue were inadequate prior to the decisions of the California Supreme Court in *Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, and *Harris,* 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391, on July 29, 1993. "In *Clark* ... the California Su-

---

**11.** A review of the docket in *Stanley* indicates that the district court has not yet reviewed the magistrate judge's report. It appears that the magistrate judge is proceeding at this time as if all claims will be decided on the merits.

**12.** Interestingly, after finding the untimeliness bar consistently applied and adequate, the *Stanley* report found that the California Su-

preme Court applied the bar inconsistently in Stanley's case and declined to recommend dismissing Stanley's claims based on that bar. *Stanley* at 13–17. The *Stanley* report did recommend dismissing certain claims as pretermitted, but only because the petitioner failed to allege anything at all about that bar's adequacy other than that it was inadequate. *Id.* at 20–21.

preme Court attempted to set out a definite rule for prospective application. Because the California Supreme Court set out to create a rule that would be consistently applied, however, it does not follow that the rule in historical fact has been so applied." *Bennett,* 322 F.3d at 583 (internal citations omitted). In the present case, Respondent must prove that the California Supreme Court became consistent in barring claims as untimely between July 29, 1993, and an uncertain date or dates between August 8, 1996, and August 3, 2001; that the court became consistent in barring claims as successive between July 29, 1993, and August 8, 1996; and that the court became consistent in barring claims as pretermitted between July 29, 1993, and May 10, 1996. "[I]t is the actual practice of the state courts, not merely the precedents contained in their published opinions, that determine [sic] the adequacy of procedural bars preventing the assertion of federal rights." *Powell,* 357 F.3d at 879; *Dossman,* 2004 WL 302335, at *5 ("The state's actual *practice* in applying the rule, rather than just its stated *rule,* must be examined." (emphasis in original)). Because the dates on which Petitioner's purported defaults of successive and pretermitted claims are clear, the Court addresses those bars first.

Despite the fact that the California Supreme Court has applied these bars to a significant number of claims since 1993 as evidenced by postcard denials citing the relevant authorities, *see supra* notes 3–4, Respondent has not cited a single published case or other reasoned opinion that demonstrates that California, "in actual practice," *Powell,* 357 F.3d at 872, consistently applied rules barring claims as successive and pretermitted by August 8 and May 10, 1996, respectively. Indeed, Respondent has cited no cases that show that either of these bars ever has been applied consistently, simply because there are no such cases. *Clark* and *Harris* applied entirely different rules, the former denying a petition as untimely and the latter granting a petition after determining that an exception to the bar of repetitive claims applied. Because the California Supreme Court has not issued a reasoned opinion since 1993, *cf. Clark,* 21 Cal.Rptr.2d 509, 855 P.2d at 740, in either a capital or a noncapital case, explaining why it deemed a particular habeas claim to be successive or pretermitted, this Court simply is unable to determine whether these bars are applied consistently. Consequently, Respondent has not met her burden of proving that the bars are adequate.

The issue of whether the untimeliness bar is adequate is somewhat more difficult for two reasons. First, as noted, the Court has no way of knowing when between August 8, 1996, and August 3, 2001, Petitioner's purported defaults of claims as untimely occurred. Second, unlike the situation with respect to the other bars, there are four published cases—all capital—in which the California Supreme Court has addressed whether claims should be barred as untimely.

In *Clark,* 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, the court found the petition at issue, containing four claims, to be untimely and accordingly denied it. In *In re Gallego,* 18 Cal.4th 825, 77 Cal. Rptr.2d 132, 959 P.2d 290 (1998), and in *Robbins,* 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311, the court explained why it found one claim out of thirty-five and one claim out of forty, respectively, to be untimely; the court disposed of all seventy-five claims for various reasons, including untimeliness with respect to almost of them, without explaining why some claims were timely and others were not. One justice in *Gallego* described the court's procedural rules as "a Byzantine system of procedural hurdles, each riddled with exceptions and fact-intensive qualifications." 77 Cal.Rptr.2d 132, 959 P.2d at 302

(Brown, J., concurring & dissenting). Finally, in *In re Sanders*, 21 Cal.4th 697, 87 Cal.Rptr.2d 899, 981 P.2d 1038 (1999), a fractured court gave various reasons why it found a petition (in which the number of claims was not indicated) to be timely; no opinion in the case commanded a majority of the court. Indeed, the author of *Clark* himself declared that *Sanders* "contradict[ed]" the court's untimeliness rule. 87 Cal.Rptr.2d 899, 981 P.2d at 1061 (Baxter, J., dissenting). According to another justice in that case, the court's application of the untimeliness bar has been "arbitrary and capricious." *Id.* at 1057 (Mosk, J., concurring).

These cases alone strongly suggest that the court may not have applied the untimeliness bar consistently. However, even assuming that the majority or plurality opinions in these four cases are consistent with one another, Respondent nonetheless has not met her burden of establishing that the California Supreme Court applies the untimeliness bar consistently. In the years since *Clark*, that court has explained its practice with respect to only six claims in three petitions apart from the claims in the *Sanders* petition. However, during the same time period it has determined whether multiple claims in hundreds of other capital habeas petitions were untimely.[13] As the Ninth Circuit has recognized,

> It is theoretically possible, we suppose, to reconcile and explain all of the California Supreme Court decisions entertaining on the merits or rejecting as untimely petitions.... Those divergent decisions may indeed represent consistent exercises of discretion rather than random applications of or exceptions to

the timeliness rule. But we have no way of knowing whether that is the case. The California Supreme Court's denials of habeas petitions that [the petitioner] relies upon were accomplished by brief minute entries in what has been described as 'post-card denial.' We can discern no apparent relationship between the time of delay and the findings concerning timeliness. Nor could [the petitioner] be expected to do so.

*Morales*, 85 F.3d at 1392. "Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate to support a state decision, to be considered adequate, the discretion must entail the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits." *Bennett*, 322 F.3d at 583 (internal citations and quotation marks omitted). While the California Supreme Court's published decisions explaining its application of the untimeliness bar are entitled to and indeed receive great deference from this Court, the fact is that these decisions concern only a tiny percentage of the total number of claims that court has reviewed. Again, Respondent simply has presented insufficient evidence to meet her "burden of demonstrating that the bar is applicable—in this case that the state procedural rule has been regularly and consistently applied." *Id.* at 586.

Respondent correctly notes that there is no requirement that a state court issue reasoned decisions. No such requirement is implied here. The California Supreme Court applies its procedural bars "as a means of protecting the integrity of [its]

---

**13.** In addition to reviewing the approximately 200 cases cited by Petitioner (including the four relevant published opinions in *Clark, Gallego, Robbins,* and *Sanders* as well as the orders related to Petitioner), this Court conducted a comprehensive examination of the California Supreme Court's published and unpublished post-*Clark* capital habeas opinions and orders from 1993 to the present to determine whether any might support Respondent's position. None did so.

own appeal and habeas corpus process," not to "insulat[e] its judgments from federal court review." *Robbins*, 959 P.2d at 316 n. 1 (emphasis omitted). It goes without saying that the court may continue to apply and explain its procedural bars as it sees fit and may choose to dispose of habeas claims by postcard denials. Indeed, this Court is sympathetic to the California Supreme Court's decision to employ postcard denials given the large number of habeas claims it must address. *Cf. Powell*, 357 F.3d at 879 ("sympathetic" to state courts' decisions to issue unpublished decisions). "But [this Court is] also bound by [United States] Supreme Court case law, as well as considerations of fairness, to determine the actual practice of state courts in enforcing their procedural bars," and that actual practice necessarily includes postcard denials. *Id.* Because the underpinnings of the determinations reflected in such denials cannot be ascertained with any certainty on the record now before it, and because it must follow *Bennett*, this Court cannot avoid a conclusion that Respondent has failed to meet her burden of proving that the bars are applied consistently.[14] Accordingly, under *Bennett*, the state procedural bars at issue are inadequate to support the state's judgment against Petitioner.

## III. DISPOSITION

Respondent has not demonstrated that the state procedural bars of claims deemed untimely, successive, or pretermitted are adequate to support the state superior court's judgment against Petitioner, and thus the claims that are the subject of Petitioner's motion for reconsideration are not procedurally defaulted. Accordingly, the motion for reconsideration is granted.

Respondent shall file either a motion to dismiss any of Petitioner's claims pursuant to *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), or a statement that she does not intend to file such a motion, not later than thirty-five days after the Clerk of the Court mails the present order to the parties. If Respondent does file such a motion, Petitioner shall file any opposition to the motion not later than twenty-eight days after Respondent files her motion. Respondent shall file any reply to the opposition to the motion not later than eighteen days after Petitioner files his opposition to the motion. Unless otherwise ordered, pursuant to Civil Local Rule 7–1(b), the Court will take the motion under submission upon receipt of Respondent's reply or upon expiration of the time to file a reply.

It is so ordered.

---

**14.** Because it concludes that Respondent has not shown that the California Supreme Court applies the relevant procedural bars consistently, the Court need not consider any of the other arguments raised by the parties, such as whether the state procedural rules are clear or well-established or whether Petitioner has demonstrated cause and prejudice to excuse any procedural default.